IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| IMMIGRANT LEGAL ADVOCACY PROJECT and AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION, | ) ) ) | Case No. 2:21-cv-00066-JAW |
| | ) ) | |
| Plaintiffs, | ) ) | **AMENDED COMPLAINT FOR** |
| | ) | **DECLARATORY AND INJUNCTIVE** |
| v. | ) | **RELIEF FOR VIOLATION OF THE** |
| | ) | **FREEDOM OF INFORMATION ACT,** |
| U.S. IMMIGRATION AND CUSTOMS | ) | **5 U.S.C. § 552** |
| ENFORCEMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## <u>INTRODUCTION</u>

1.      The American Civil Liberties Union of Maine Foundation ("ACLU of Maine")

and Immigrant Legal Advocacy Project ("ILAP") (collectively, "Plaintiffs"), bring this action

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., to obtain injunctive and

other appropriate relief requiring Defendant U.S. Immigration and Customs Enforcement ("ICE"

or "Defendant") to respond to a FOIA request sent by Plaintiffs on January 15, 2021

("Request"), and to promptly disclose the requested records.

2.      The purpose of the Request is to obtain information about ICE detention in

Maine, including transfers of ICE detainees to and from Maine during the COVID-19 pandemic,

as well as ICE's future plans to develop another holding facility in Scarborough, Maine.

3.      Given the need for transparency on these topics, Plaintiffs filed the Request on

January 15, 2021, seeking records regarding ICE transfers of immigrant detainees to and from

detention facilities in Maine, as well as records regarding the new facility in Scarborough,

Maine. A true and correct copy of the Request is attached as **Exhibit A**.

4.      As of the date of filing this complaint, Plaintiffs have received no response to the Request. This action is necessary to require ICE to produce all responsive records on an expedited basis and to otherwise enforce ICE's obligations under the FOIA.

## JURISDICTION

5.      This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701–706, and 28 U.S.C. § 1331.

## VENUE

6.      Venue in the District of Maine is proper under 5 U.S.C. § 552(a)(4)(B), including because Plaintiffs' principal places of business are in the District of Maine.

## PARTIES

7.      Plaintiff ACLU of Maine is a non-profit 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases and educates the public about civil rights and civil liberties issues across the country.

8.      Plaintiff ILAP is Maine's only state-wide immigration legal services organization. In that role, ILAP advances justice and equity for immigrants and their families through direct legal services, community education, and systemic advocacy.

9.      Defendant U.S. Immigration and Customs Enforcement ("ICE") is a component of the Department of Homeland Security, a department of the executive branch of the U.S. government, and is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

10.      Plaintiffs are informed and therefore believe that ICE has possession, custody, or control of the requested records.

**FACTS**

11.     Despite the dangers of detention in closed congregate settings during the pandemic, and the heightened risks of spreading COVID-19 between facilities,[1] ICE transfers to and from the Cumberland County Jail in Portland, Maine, dramatically increased during the summer of 2020. Specifically, after facing lawsuits in multiple ICE facilities in New England,[2] ICE started a practice of using Cumberland County Jail as a short-term transfer facility. Starting in June 2020, ICE began transferring ICE detainees from elsewhere in New England to Portland, Maine, only to quickly transfer them out of state, mostly to facilities in Louisiana, Texas, and other locations with heightened risks of COVID-19 exposure. This transfer practice exposed detainees and communities alike to heightened risk of infection with COVID-19.

12.     ICE pursued this practice despite knowing the dangers associated with such transfers—dangers reflected in ICE's own policy. According to ICE's current COVID-19

---

[1] From April to August 2020, people detained by ICE faced infection rates 13 times higher than that of the general U.S. population—even higher than the infection rate in other closed congregate settings like federal and state prisons. *See* Adrianna Rodriguez, *'A stain on our country': ICE efforts to stop COVID-19 spread fail to protect immigrant detainees from virus*, USA Today (Nov. 11, 2020), available at https://www.usatoday.com/story/news/health/2020/11/11/covid-ice-detainee-case-rate-higher-than-general-us-study/6220333002/ (citing Parsa Erfani, *et al*., *COVID-19 Testing and Cases in Immigration Detention Centers*, JAMA Research Letter, April-August 2020 (Oct. 29, 2020), https://jamanetwork.com/journals/jama/fullarticle/2772627#:~:text=From%20April%20to%20August2020%2C%20the%20mean%20monthly%20case%20rate,2.0%20to%206.9%20per%20month).

[2] *See, e.g.*, *Yanes v. Martin*, No. 120CV00216MSMPAS, 2020 WL 3047515 (D.R.I. June 2, 2020) (in a class habeas action by ICE detainees in Wyatt Detention Facility in Rhode Island, ordering individualized bail hearings for ICE detainees); *da Silva Medeiros v. Martin*, No. CV 20-178 WES, 2020 WL 2104897, at *1 (D.R.I. May 1, 2020) (in habeas corpus petitions on behalf of medically vulnerable ICE detainees, granting relief enjoining ICE from transferring petitioners outside the Court's jurisdiction throughout the action and granting their immediate release); *Gomes v. US Dep't of Homeland Sec., Acting Sec'y*, No. 20-CV-453-LM, 2020 WL 2514541 (D.N.H. May 14, 2020) (in emergency habeas petition, holding that that detainees whose age or health conditions placed them at high risk for serious illness or death from exposure to COVID-19 were entitled to bail hearings); *Quadrelli v. Moniz*, No. 20-CV-10685-ADB, 2020 WL 3051778 (D. Mass. June 8, 2020) (granting class certification for a habeas corpus petition by ICE detainees in a certain unit of the Plymouth County Correctional Facility); *Savino v. Souza*, 459 F. Supp. 3d 317, 2020 WL 2404923 (D. Mass. May 12, 2020) (requiring universal testing of ICE detainees, prohibiting new immigration detention in Bristol County House of Correction, prohibiting transfer out of Bristol County until individuals are tested).

Pandemic Response Requirements, transfers between facilities are prohibited unless "necessary" for a limited number of reasons, such as "medical evaluation," "medical isolation/quarantine," or "to prevent overcrowding."[3] "Detainee transfers for any other reason require justification and pre-approval from the local ERO Field Office Director."[4] Any "transfers must have cleared quarantine protocols and be cleared by ICE Health Services Corps."[5] A prior version of the policy had required "limiting" such transfers.[6]

13.     Despite these rules to limit or discontinue transfer, ICE transfers to and from Cumberland County Jail dramatically increased between June and December 2020. Not only did this practice expose ICE detainees to an increased risk of COVID-19 from repeated transfers in unhygienic conditions, and travel to regions with higher COVID-19 prevalence, but the out-of-state transfers into Cumberland County Jail also increased the risk of introducing COVID-19 into the State of Maine, which had experienced among the lowest COVID-19 rates in the United States throughout the summer.

14.     On October 23, 2020, a lawsuit was filed on behalf of an ICE detainee, Antony Jose Canela Rodriguez, who ICE transferred from out of state to the Cumberland County Jail. *See* Compl., *Rodriguez v. Wolf*, Docket No. 20-cv-393-LEW (D. Me. Oct. 23, 2020). Mr. Canela Rodriguez sought relief against transfer to the southern United States based on the corresponding COVID-19 risks associated with unsanitary transport and detention, through multiple facilities,

---

[3] *COVID-19 Pandemic Response Requirements*, U.S. Immigration and Customs Enforcement, (Oct. 27, 2020), available at https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf (stating "Transfers of ICE detainees and non-ICE detained populations to and from other jurisdictions and facilities are discontinued unless necessary for medical evaluation, medical isolation/quarantine, clinical care, extenuating security concerns, release or removal, or to prevent overcrowding. Detainee transfers for any other reason require justification and pre-approval from the local ERO Field Office Director. Detainee transfers must have cleared quarantine protocols and be cleared by ICE Health Services Corps.").

[4] *Id.*

[5] *Id.*

[6] COVID-19 Pandemic Response Requirements, U.S. Immigration and Customs Enforcement (September 4, 2020 version), available at https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities-v4.pdf.

in areas with higher COVID-19 risks. Another court recently ruled that a similar ICE transfer likely violated the detainee's Fifth Amendment rights. *See Dorce v. Wolf*, Docket No. 20-cv-11306, 2020 WL 7264869 (D. Mass. Dec. 10, 2020). After admitting that they had been planning to transfer Mr. Canela Rodriguez, ICE officials agreed to keep Mr. Canela Rodriguez in Massachusetts during pending immigration court proceedings.

15.     Even after the lawsuit, though, ICE continued its practice of using Cumberland County Jail as a short-term facility in a chain of dangerous inter-facility transfers, until Cumberland County Jail halted the practice. Cumberland County Jail ("CCJ") issued a moratorium on out of state transfers into the facility starting December 7, 2020. On December 4, 2020, an official from the Cumberland County Jail notified ICE officials that "**ALL Out of State Transfers and/or Field Arrests** will ***not*** be accepted at CCJ beginning Monday, December 7, 2020."[7] (emphasis in original).

16.     In parallel with ICE's pattern of unnecessarily exposing detainees to COVID-19, ICE is also moving ahead with plans to develop another ICE facility in Scarborough, Maine. According to ICE documents released to the press, the planned facility would be used to "process, fingerprint, and detain people" for up to 12 hours.[8] Given ICE's recent practice of using Maine as a stop-over facility for out-of-state transfers—exposing detainees and Mainers alike to heightened risk of COVID-19 spread—more information is necessary about the new ICE facility in Maine.

17.     The Request seeks records to provide necessary public oversight into ICE's treatment of detainees in Maine during the COVID-19 pandemic, as well as ICE's future plans to

---

[7] The notice added that once ICE had additional testing capacity, the Cumberland County Jail was "open to having a follow-up discussion to accepting Out of State Field Arrests, but Facility transfers will still ***not*** be accepted." In-state arrests or transfers within the State of Maine would continue to be accepted, as before the June 2020 change in ICE practices.

[8] Nick Schroeder, *Construction for Covert ICE Facility in Scarborough Resumes after Complaints*, Bangor Daily News (Dec. 15, 2020), https://bangordailynews.com/2020/12/15/news/portland/construction-for-covert-ice-facility-in-scarborough-resumes-after-complaints/.

create a new detention facility in the state.

### Plaintiffs' FOIA Request

18.     The Request seeks records regarding ICE detention in Maine, including transfers of ICE detainees to and from Maine during the COVID-19 pandemic, as well as ICE's future plans to develop another holding facility in Scarborough, Maine. Because no adequate search has yet been completed, the period covered by the Request is ongoing.

19.     Specifically, the Request seeks:

   A. Any records approving transfers of ICE detainees to or from ICE Detention Facilities in Maine, including, but not limited to, approval or clearance for transfers as required by ICE's COVID-19 Pandemic Response Requirements.

   B. Any records documenting transfers of detainees to or from the Cumberland County Jail, including, but not limited to Form I-203 (Notice to Detain or Release) and Form I-216 (Record of Person and Property Transfer).

   C. Any records concerning communications with the Cumberland County Jail regarding transfers of ICE detainees, including but not limited to electronic communications such as emails and fax between employees of ICE and the Cumberland County Jail.

   D. Records regarding precautions for transferring ICE detainees to or from the Cumberland County Jail, including, but not limited to, testing, vaccination, physical distancing, and hygiene measures.

   E. Any records from June 2019 to the present regarding the lease and development plans for the ICE facility in Scarborough.

   F. Any records from June 2019 to the present relating to zoning approval for the ICE facility in Scarborough.

   G. Any records from June 2019 to the present regarding plans for immigration detention at the ICE facility in Scarborough.

   H. Any records regarding policies for immigration detention at the ICE facility in Scarborough.

20.     The Request includes an application for expedited processing based upon a "compelling need" for the requested records under 5 U.S.C. § 552(a)(6)(E)(v)(II), because the ACLU of Maine is an organization "primarily engaged in disseminating information," and because of the urgency "to inform the public concerning actual or alleged government activity." (Ex. A at 9).

21.     The ACLU is primarily engaged in disseminating information within the meaning of 5 U.S.C. § 552(a)(6)(E)(v), given that a critical and substantial aspect of the ACLU's mission is to obtain information about government activity, analyze that information, and publish and disseminate it widely to the press and public. (Ex. A at 7-9).

22.     The Request also includes an application for a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." (Ex. A at 7-8).

23.     On January 15, 2021, the Plaintiffs submitted the FOIA Request to the email address designated by ICE for that purpose, ice-foia@ice.dhs.gov. *See* Ex. B (documenting the email sent to ICE attaching the FOIA Request); *see also* 6 C.F.R. § 5.3(a)(1) (describing that all DHS components "have the capability to receive [FOIA] requests electronically," including "through email"). According to the guidance on ICE's website, the ICE FOIA office "will have limited access for processing incoming physical mail due to the national response to COVID-19," and, as such, "[i]t is highly recommended that all correspondence regarding FOIA requests be sent electronically to ice-foia@ice.dhs.gov to avoid delay in processing."[9]

24.     On February 21, 2021, the Plaintiffs followed up by email with the ICE FOIA office. *See* Ex. D. Plaintiffs explained that "more than 20 business days [had] passed" since the FOIA request was filed "with no response." *Id.* Plaintiffs requested an immediate response, and provided contact information in the event that FOIA officials at ICE had any questions regarding the request. Plaintiffs have received no response.

## III.     The Agency Violated Its Obligation to Respond to the FOIA Request within 20 Days

25.     The agency has a legal duty under FOIA to determine whether to comply with a request within 20 days (excepting Saturdays, Sundays, and legal public holidays) of receiving the

---

[9] *Submitting FOIA Request*, U.S. Immigration and Customs Enforcement, available at https://www.ice.gov/foia/request#:~:text=It%20is%20highly%20recommended%20that,to%20avoid%20delay%20in%20processing (last visited Feb. 12, 2021) (attached as Exhibit C).

request, and also has a legal duty to notify a requester of the agency's determination and the reasons therefor within the same 20 days. 5 U.S.C. § 552(a)(6)(A)(i).

26.     In other words, "[t]he statute requires that, within the relevant time period, an agency must determine whether to comply with a request—*that is, whether a requester will receive all the documents the requester seeks*." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013) (emphasis added).

27.     Additionally, Defendant has a legal duty under FOIA to determine whether to provide expedited processing, and to provide notice of that determination to the requester, within 10 days after the request. 5 U.S.C. § 552(6)(E)(ii)(I).

28.     As of the date of this Complaint, more than 20 business days after receiving the FOIA request, Defendant has failed to provide any response to the Request. Plaintiffs filed their FOIA request on January 15, 2021, and, since then, 31 business days have elapsed with no response from ICE, nor any determination with respect to whether to comply with the request. Accordingly, ICE has violated the statutory deadlines under FOIA.

29.     As of the date of this filing, Plaintiffs have not received any response to their request for expedited processing. Accordingly, ICE has also violated the statutory deadline for expedited processing under FOIA.

30.     Moreover, ICE has violated its substantive obligations under the FOIA. It has failed to make the clearly delineated categories of records requested in the FOIA Request "promptly available" as required by law. *See* 5 U.S.C. § 552(a)(6)(C).

31.     Because ICE failed to comply with the 20-business-day time limit provision of FOIA—requiring a response within 20 business days regarding whether to comply with the request, 5 U.S.C. § 552(a)(6)(A)(i)—Plaintiffs are deemed to have exhausted their administrative remedies with respect to the Request under 5 U.S.C. § 552(a)(6)(C)(i).

## FIRST CAUSE OF ACTION
### Violation of FOIA for Failure
### to Provide a Determination
### Within 20 Business Days

32.     Defendant has a legal duty under FOIA to determine whether to comply with a request within 20 days (excepting Saturdays, Sundays, and legal public holidays) after receiving the request, and also has a legal duty to immediately notify a requester of the agency's determination and the reasons therefor. 5 U.S.C. § 552(a)(6)(A)(i).

33.     In violation of 5 U.S.C. § 552(a)(6)(A)(i), and applicable regulations promulgated thereunder, Defendant ICE failed to determine whether to comply with the Request within 20 business days after receiving it.

## SECOND CAUSE OF ACTION
### Violation of FOIA for Failure
### to Make Records Promptly Available

34.     Plaintiffs have a legal right under FOIA to obtain the specific agency records requested on January 15, 2021, and there exists no legal basis for Defendant's failure to make the requested records "promptly available" to Plaintiffs, their members, and the public. 5 U.S.C. § 552(a)(3)(A).

35.     On information and belief, Defendant currently has possession, custody, or control of the requested records.

36.     Defendant has failed to make reasonable efforts to search for records sought by the Request.

37.     Defendant has failed to promptly make available the records sought in the Request.

## THIRD CAUSE OF ACTION
### Violation of FOIA for Improperly Denying
### Plaintiffs' Request for Expedited Processing

38.     Plaintiffs have a legal right under FOIA and agency regulations to expedited processing because their Request involves "[a]n urgency to inform the public about an actual or

alleged federal government activity, if made by a person who is primarily engaged in disseminating information." 6 C.F.R. § 5.5(e)(1)(ii).

39.     Defendant has a legal duty under FOIA to determine whether to provide expedited processing, and to provide notice of that determination to Plaintiffs, within 10 days of the Request. 5 U.S.C. § 552(a)(6)(E)(ii)(I).

40.     By failing to determine whether to provide expedited processing and to provide notice of that determination to Plaintiffs within 10 days of the Request, Defendant violated FOIA, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and applicable regulations promulgated thereunder.

41.     Because Defendant has not provided any response to the Request, this Court has jurisdiction under FOIA, 5 U.S.C. § 552(a)(6)(E)(iv), to review ICE's failure to make a determination concerning Plaintiffs' request for expedited processing.

PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court award the following relief:

1.      Declare that Defendant ICE violated FOIA by failing to make a determination whether to comply with the Request within 20 business days;

2.      Declare that Defendant ICE violated FOIA by failing to provide expedited processing of the Request;

3.      Declare that Defendant ICE violated FOIA by unlawfully withholding the requested records;

4.      Order Defendant ICE to immediately disclose the requested records to the public and make copies immediately available to Plaintiffs without charge for any search or duplication fees, or, in the alternative, provide for expedited proceedings to adjudicate Plaintiffs' rights under FOIA;

10

5.      Award Plaintiffs' reasonable costs and attorneys' fees; and

6.      Grant such other relief as the Court may deem just and proper.

DATED this 4th day of March, 2021

                                        Respectfully submitted,

                                        /s/ Emma E. Bond
                                        Emma E. Bond,
                                        Zachary L. Heiden
                                        American Civil Liberties Union of Maine
                                        Foundation
                                        P.O. Box 7860
                                        Portland, Maine 04112
                                        (207) 619-8687
                                        *ebond@aclumaine.org*
                                         (207) 619-6224
                                        *heiden@aclumaine.org*

                                        s/ Anna R. Welch
                                        Anna R. Welch, Esq.
                                        Refugee and Human Rights Clinic at
                                        University of Maine School of Law
                                        246 Deering Avenue, 5th Floor
                                        Portland, Maine 04102
                                        (207) 228-8709
                                        *anna.r.welch@maine.edu*

                                        s/ Philip Mantis
                                        Philip Mantis, Esq.
                                        s/ Julia Brown
                                        Julia Brown, Esq.
                                        Immigrant Legal Advocacy Project
                                        489 Congress Street, 3rd Floor
                                        P.O. Box 17917
                                        Portland, Maine 04112
                                        (207) 780-1593
                                        *pmantis@ilapmaine.org*
                                        *jbrown@ilapmaine.org*

                                        *Attorneys for Plaintiffs*