# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IMMIGRANT LEGAL ADVOCACY PROJECT and AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 2:21-CV-00066-JAW |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DARCIE N. MCELWEE
UNITED STATES ATTORNEY

/s/ *Katelyn E. Saner*
Katelyn E. Saner
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street Plaza, East Tower
Portland, ME 04101
(207) 780-3257
katelyn.saner@usdoj.gov

## I. PRELIMINARY STATEMENT

There is one issue in dispute in this FOIA case: whether Defendant United States Immigration and Customs Enforcement ("ICE" or "Defendant") conducted an adequate search for records responsive to Plaintiffs' American Civil Liberties Union of Maine and Immigrant Advocacy Legal Project (together, "Plaintiffs") FOIA request.

The Declaration of Fernando Pineiro (the "Pineiro Declaration") appended hereto establishes that ICE conducted an adequate search: the agency reasonably identified multiple offices within the agency likely to have responsive records, conducted searches of those offices' files in a manner that was reasonably calculated to discover responsive documents, and produced approximately 1,930 pages of records responsive to Plaintiffs' FOIA request. Plaintiffs' speculation that unspecified operational policies or procedures regarding ICE's Scarborough, Maine facility should exist and should have been produced in response to their FOIA request, standing alone, does not render ICE's search inadequate. See SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Mere speculation that as yet uncovered documents may exist does not undermine [a] finding that the agency conducted a reasonable search for them." (citation omitted)). Summary judgment should enter in full for ICE.

## II. FACTUAL AND PROCEDURAL BACKGROUND

**A. Plaintiffs' FOIA Request.**

On January 15, 2021, Plaintiffs submitted a FOIA request (the "Request") to ICE. SMF ¶ 1.[1] Plaintiffs' Request sought two categories of documents. First, the Request sought records "from March 1, 2020 through the present" relating to transfers of ICE detainees in Maine, specifically:

---

[1] References to "SMF" are to Defendant's Statement of Undisputed Material Facts (ECF No. 35).

1. Any records approving transfers of ICE detainees to or from ICE Detention Facilities in Maine, including, but not limited to, approval or clearance for transfers as required by ICE's COVID-19 Pandemic Response Requirements.

2. Any records documenting transfers of detainees to or from the Cumberland County Jail, including, but not limited to Form I-203 (Notice to Detain or Release) and Form I-216 (Record of Person and Property Transfer).

3. Any records concerning communications with the Cumberland County Jail regarding transfers of ICE detainees, including but not limited to electronic communications such as emails and fax between employees of ICE and the Cumberland County Jail.

4. Records regarding precautions for transferring ICE detainees to or from the Cumberland County Jail, including, but not limited to, testing, vaccination, physical distancing, and hygiene measures.

SMF ¶ 2. Second, the Request sought records for the same March 1, 2020 through present time period (unless otherwise specified) relating to the "lease and development," "zoning approval," "plans for immigration detention," and "policies for immigration detention" at ICE's facility in Scarborough, Maine, specifically:

5. Any records from June 2019 to the present regarding the lease and development plans for the ICE facility in Scarborough.

6. Any records from June 2019 to the present relating to zoning approval for the ICE facility in Scarborough.

7. Any records from June 2019 to the present regarding plans for immigration detention at the ICE facility in Scarborough.

8. Any records regarding policies for immigration detention at the ICE facility in Scarborough.

SMF ¶ 2.

### B. Plaintiffs' Federal Lawsuit.

Less than two months after submitting the Request to ICE, Plaintiffs filed this instant federal lawsuit on March 3, 2021. ECF No. 1 (Compl.). The operative Amended Complaint, filed on March 4, 2021, asserts three causes of action under FOIA: (i) Count I alleges a failure by ICE

to provide a determination on the Request within 20 business days, as required by 5 U.S.C. § 552(a)(6)(A)(i); (ii) Count II alleges a failure by ICE to make the records sought in the Request "promptly available" to Plaintiff, as required by 5 U.S.C. § 552(a)(3)(A); and (iii) Count III alleges a failure by ICE to make a determination on Plaintiffs' request for expedited processing of the Request within 10 days, as required by 5 U.S.C. § 552(a)(6)(E)(ii)(I). ECF No. 4 (Am. Compl.) at PageID #9-10, ¶¶ 32-41.

### C. ICE's Search for Responsive Records in Response to a FOIA Request Generally.

In general, upon receipt of a FOIA request, the ICE FOIA Office identifies the directorates and/or program offices that are likely to possess records responsive to the FOIA request based on the description of records provided by the requestor and the ICE FOIA Office's knowledge of offices' missions within the agency. SMF ¶ 4. The ICE FOIA Office then sends a copy of the FOIA request and instructions to the FOIA point of contact ("POC") in any identified directorate and/or program office. SMF ¶ 4. These POCs, who have institutional knowledge of their office's operations and activities, then identify component office(s) and/or employee(s) within their offices who are likely to possess responsive records. SMF ¶ 4. These persons are also given a copy of the FOIA request and are tasked with conducting searches for responsive records. SMF ¶ 4. ICE employees are permitted to exercise discretion, based on their operational knowledge and subject matter expertise, in selecting the terms and search locations reasonably calculated to locate responsive records. SMF ¶¶ 7, 17.

### D. ICE's Search for Responsive Records in Response to the Request.

ICE followed this general process in searching for documents responsive to the Request. The ICE FOIA Office first reviewed the Request and determined, based on the substance of the Request and its knowledge of office missions within ICE, that two directorates/program offices

were likely to have documents responsive to the Request: (1) ICE's Office of Enforcement and Removal Operations ("ERO") and (2) ICE's Office of Acquisition Management ("OAQ"). SMF ¶ 5.

### 1. *ICE ERO's Search in Response to the Request.*

Beginning first with ERO, this directorate's mission is to identify, arrest, and remove noncitizens who present a danger to national security or are a risk to public safety, as well as those who enter the United States illegally or otherwise undermine the integrity of immigration laws and border control efforts. SMF ¶ 6. The ERO's Information Disclosure Unit ("IDU") POC, who received the Request from the ICE FOIA Office, reviewed the Request and based on her experience and knowledge of her office's practice and activities, determined that searches of the ERO Boston Field Office (which has responsibility over ICE's operations in Maine, among other states) and the ERO Policy Office (which keeps records pertaining to ICE's policies) would be reasonably likely to possess documents responsive to the Request, if any. SMF ¶ 9. Specifically, the ERO IDU POC tasked (a) a Management and Program Analyst ("MPA") in the ERO Policy Office and (b) two Assistant Field Office Directors ("AFODs") and a Supervisory Detention and Deportation Officer ("SDDO") in the ERO Boston Field Office to search for documents responsive to the Request, if any. SMF ¶¶ 10-11.

In March 2021, a MPA in the ERO Policy Office, whose job responsibilities include preparing policies for enforcement of United States immigration laws, searched the ICE Policy Manual and the ERO Policy Library using the terms "Scarborough" and "detention." SMF ¶ 10. The ICE Policy Manual is a repository of current ICE-wide management and operational policies that can be searched by ICE employees via a natural language search engine. SMF ¶ 10. The ERO Policy Library contains ERO policies, and like the ICE Policy Manual, it can be searched

by ICE employees via a natural language search. SMF ¶ 10. Together, the ICE Policy Manual and the ERO Policy Library are the only databases that contain ICE-wide and ERO-specific policies. SMF ¶ 10. This search by the MPA did not yield responsive records. SMF ¶ 10.

Also in March 2021, two AFODs in the Boston Field Office, who together oversaw ICE's operations in portions of the New England region, including Maine, searched for records pertaining to the FOIA Request. One AFOD searched his Outlook email account using the search terms of "CCJ," "Cumberland," and "Cumberland County" SMF ¶ 12. The other AFOD searched his Outlook email account using the search terms of "Cumberland County jail" and "Scarborough," and his computer files using the search terms of "Cumberland County jail" and "Scarborough." SMF ¶ 13. These searches yielded responsive records, which were forwarded to the ICE FOIA Office for review. SMF ¶¶ 12-13, 15. Further, also in March 2021, a SDDO in the Boston Field Office, who oversaw the daily operations of Maine including the supervision of detainee transfers and who was involved in plans for ERO facilities in Maine, searched his Outlook email account for the terms "ICE transfers," "Detainee transfers," "Cumberland County Jail," "Sheriff Kevin Joyce," "Scarborough office," "Zoning Approval," "Scarborough office lease," and "COVID." SMF ¶ 14. These searches also yielded responsive records, which were forwarded to the ICE FOIA Office for review. SMF ¶¶ 14-15.

    2. *ICE OAQ's Search in Response to the Request.*

Turning to the OAQ, its mission is to deliver quality acquisition solutions in support of ICE and the United States Department of Homeland Security ("DHS")'s missions. SMF ¶ 16. OAQ's Acquisition Policy Office ("APO") POC, who received the Request from the ICE FOIA Office, reviewed the Request. SMF ¶ 18. The OAQ APO POC concluded that, because the Request sought documents relating to a potential future ERO facility in Scarborough, Maine, the

OAQ Detention Compliance and Removals Office ("DCR"), which is a unit within OAQ, would be reasonably likely to have responsive records, if any. SMF ¶ 18. DCR provides acquisition support to ICE headquarters and field offices throughout the country for detention, along with ancillary services and supplies in support of ICE's mission to remove noncitizens from the United States. SMF ¶ 18. DCR also supports ERO in the planning, awarding, and administration of contracts for law enforcement and compliance requirements, including detention management compliance, fugitive operations, criminal alien program, removal management, and response coordination. SMF ¶ 18.

In March 2021, a Senior Advisor in OAQ DCR, whose job responsibilities include the preparation of internal operating guides for OAQ DCR as well as external correspondence for vendors and contractors, and who is familiar with the OAQ file systems and contracting applications, searched the OAQ shared drive using the terms "Scarborough," "Maine," and "Cumberland County Jail." SMF ¶ 19. She also searched the Purchase Request Information System Management ("PRISM") contracting database using the terms "Scarborough" and "Cumberland County." SMF ¶ 19. The PRISM contracting database is used for all formal contracting actions including contract awards, contract modification actions, and Intergovernmental Service Agreements ("IGSA"). This Senior Advisor's search returned no potentially responsive records. SMF ¶ 19.

E. **The ICE FOIA Office's Review of the Potentially Responsive Records and ICE's Production of Responsive Records.**

Based on the information that ERO and OAQ personnel provided regarding the searches conducted in those offices, it was determined that all locations reasonably likely to contain records responsive to the Request were searched. SMF ¶ 21. In response to Plaintiffs' Request, ICE reviewed and produced to Plaintiffs approximately 1,930 pages of responsive records.

SMF ¶ 20.

### F. The Parties' Resolution of Their Dispute Regarding Certain of ICE's Redactions/Withholdings.

Following the completion of ICE's production, the parties conferred on multiple occasions to discuss what issues remained in the lawsuit and in an attempt to resolve any remaining areas of dispute. ECF No. 25 (Joint Status Report) at PageID #100, ¶ 7. On March 14, 2022, the parties submitted a Joint Status Report that identified two potential remaining areas of dispute between the parties that could require further litigation: (1) whether ICE had conduced an adequate search in response to the Request; and (2) whether ICE had improperly withheld and/or redacted certain documents based on specified FOIA exemptions. Id. at PageID #100, ¶ 8. Following this Joint Status Report, the Court issued a Procedural Order on March 16, 2022 that required ICE to, among other things, provide to Plaintiffs by July 1, 2022 a draft Vaughn index for the contested redactions/withholdings identified by Plaintiffs. ECF No. 26 (Procedural Order).

Consistent with the Procedural Order, on July 1, 2022, ICE provided its draft Vaughn index for the contested redactions/withholdings identified by Plaintiff along with a supplemental production that released certain of these redactions/withholdings. ECF No. 32 (Joint Status Report) at PageID #125, ¶ 8. Following review of these materials, Plaintiffs have represented that they are no longer contesting ICE's redactions/withholdings. Id. at PageID #125, ¶ 10.

### G. The Parties' Disagreement Regarding the Adequacy of ICE's Search.

As of the parties' Joint Proposed Scheduling Order dated August 17, 2022, the parties had narrowed the disputed issues to one area: (1) ICE's alleged failure to perform an adequate search. ECF No. 32 (Joint Status Report) at PageID #125, ¶ 12.

Prior to this, the parties conferred on multiple occasions in an attempt to resolve their

disagreement regarding the adequacy of ICE's search. Specifically, consistent with the Procedural Order dated March 16, 2022, ICE provided its informal search protocols to Plaintiffs on March 30, 2022. ECF No. 32 (Joint Status Report) at PageID #124, ¶ 3. On April 13, 2022, Plaintiffs expressed their view that the agency's search was deficient because ICE's productions purportedly do not contain operational policies or procedures regarding ICE's Scarborough, Maine facility. Id. at PageID #124, ¶ 4. Also on April 13, 2022, ICE asked Plaintiffs if they could share any exemplar policies or procedures from another of ICE's facilities, or any other specific information that would point to the existence of operational policies or procedures responsive to the Request that were not previously produced. Id. On April 18, 2022, ICE responded to five questions raised by Plaintiffs about ICE's informal description of its search methods. Id. at PageID #124, ¶ 5. On April 29, 2022, Plaintiffs indicated that they were not able to find any publicly available exemplar operational policies or procedures. Id. at PageID #124, ¶ 6. Plaintiffs also expressed their view that at some point in the process of creating ICE's Scarborough facility, operational documents necessarily would have been created outlining what was happening at ICE's Scarborough facility. Id.

In June and July 2022, ICE followed up with the offices that had conducted searches and confirmed they had no reason to believe that operational policies or plans responsive to the Request were inadvertently overlooked during ICE's search. Id. at PageID #125, ¶ 11. ICE also asked Plaintiffs, again, whether they had any specific information that would point to the existence of operational policies or procedures responsive to the Request that were not previously produced, and indicated that the agency would be willing to review and consider any such information as appropriate. Id.

**ARGUMENT**

I.   **ICE CONDUCTED A REASONABLE SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFFS' FOIA REQUEST.**

   A.   **The Legal Standard.**

Under FOIA, an agency's summary judgment motion on the issue of the adequacy of the agency's search should be granted if the agency shows that it "conduct[ed] a search reasonably calculated to uncover all relevant documents." Kowalczyk v. DOJ, 73 F.3d 386, 388 (D.C. Cir. 1996) (internal quotation marks and citation omitted)). The fundamental question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." Weisberg v. DOJ., 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). In other words, "the focus of the adequacy inquiry is not on the results." Hornbostel v. DOI, 305 F. Supp. 2d 21, 28 (D.D.C. 2003). The fact that additional responsive records exist that were not produced does not, standing alone, render an agency's search inadequate. See Moffat v. U.S. Dep't of Just., No. CIV.A. 09-12067-DJC, 2011 WL 3475440, at *13 (D. Mass. Aug. 5, 2011), aff'd, 716 F.3d 244 (1st Cir. 2013) ("Even if a plaintiff is correct that additional responsive records exist, an agency's failure to locate them does not *ipso facto* render its search inadequate." (internal quotation marks and citation omitted, emphasis in original)); see also Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ("[A] search [under FOIA] is not unreasonable simply because it fails to produce all relevant material . . . .")

An agency may use reasonably detailed, non-conclusory affidavits to demonstrate that it conducted a reasonable search in accordance with FOIA. See Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981); see also Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). An agency affidavit can demonstrate adequacy by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such

10

records exist) were searched." Valencia–Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotation marks and citation omitted). An agency affidavit "need not 'set forth with meticulous documentation the details of an epic search for the requested records,'" Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 91-92 (D.D.C. 2009) (quoting Perry, 684 F.2d at 127) but should "'describe what records were searched, by whom, and through what processes,'" id. (quoting Steinberg v. DOJ, 23 F.3d 548, 552 (D.C. Cir. 1994)). Conducting an adequate search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts should attempt to micro manage the executive branch." Schrecker v. DOJ., 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

Agency affidavits "enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." Ground Saucer Watch, 692 F.32 at 771 (internal quotation marks and citation omitted); see also Behrens v. United States Att'y, No. 17-5014, 2017 WL 5257011, at *1 (D.C. Cir. Oct. 10, 2017) (a plaintiff's "speculation that as yet uncovered documents may exist" does not "overcome the presumption of good faith afforded to [an agency's] supporting declarations" (internal quotation marks and citation omitted)). Therefore, unless a plaintiff can point to specific evidence sufficient to put the agency's good faith into doubt, summary judgment should be granted to the agency. Ground Saucer Watch, 692 F.2d at 771. For instance, in Servicemasters Legal Defense Network v. Dep't of Defense and DOJ, the court granted summary judgment for the FBI where the plaintiff offered only conclusory contentions that the FBI was allegedly involved in a certain program and such program reports or related documents "may exist" but were not produced. 471 F. Supp. 2d 78, 85 (D.D.C. 2007).

**B.     ICE Conducted a Reasonable Search for Responsive Documents.**

The Pineiro Declaration filed herewith is consistent with the above-referenced law and establishes that ICE conducted a reasonable and adequate search for records responsive to Plaintiffs' Request. Based on its review of the Request and the subject matter expertise and knowledge of the directorates and offices within ICE, the agency directed its search efforts toward offices it determined were reasonably likely to have responsive records, if any existed. SMF ¶ 5. Specifically, ICE conducted searches for responsive records within ICE's Office of Enforcement and Removal Operations (defined earlier as "ERO")'s Policy Office (which could have records pertaining to policies), ICE's ERO Boston Field Office (which has responsibility for the state of Maine, among other states), and ICE's Office of Acquisition Management (defined earlier as "OAQ")'s Detention Compliance and Removals Office (defined earlier as "DCR") (which provides acquisition support to ICE headquarters and field offices, and also supports ERO in the planning, awarding, and administration of contracts for law enforcement and compliance requirements). SMF ¶¶ 9-15, 18-19. In doing so, ICE personnel applied appropriate search terms, see, e.g., SMF ¶¶ 10, 12-14, 19 (utilizing terms such as "CCJ," "COVID," "Cumberland," Detainee transfers," "ICE transfers," "Maine," "Scarborough," "Sheriff Kevin Joyce," and "Zoning approval") to each record system and office location searched.[2] Id. ICE then reviewed the retrieved records for responsiveness to Plaintiffs' Request, and further determined that all locations that were reasonably likely to contain records responsive to the Request were searched. SMF ¶¶ 18, 21.

---

[2] Where, as here, search terms are used, FOIA permits federal agencies "discretion to craft the search terms they believe to be reasonably tailored to uncover documents responsive to a FOIA request." Brennan Ctr. for Just. at New York Univ. Sch. of L. v. DOJ, 377 F. Supp. 3d 428, 434 (S.D.N.Y. 2019); see also Liberation Newspaper v. Dep't of State, 80 F. Supp. 3d 137, 146 (D.D.C. 2015) ("Where the search terms are reasonably calculated to lead to responsive documents, the Court should not micro manage the agency's search." (internal quotations marks and citation omitted)).

12

In sum, the Pineiro Declaration establishes that ICE reasonably identified multiple offices within the agency likely to have responsive records, conducted searches of those offices' files in a manner that was reasonably calculated to discover responsive documents, and produced approximately 1,930 pages of records responsive to the Request. See Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."). SMF ¶ [20-21. Therefore, ICE's search was adequate under FOIA.

That ICE's search purportedly did not yield unspecified operational policies or procedures regarding ICE's Scarborough facility (should these records even exist) does not render ICE's search inadequate. In fact, ICE specifically requested, after negotiating with Plaintiffs, that the FOIA POCs check to see if any such documents exist. This supplemental follow up yielded no additional records. ECF No. 32 (Joint Status Report) at PageID #125, ¶ 11. To overcome summary judgment for ICE, Plaintiffs must provide more than "mere speculation that as yet uncovered documents may exist." SafeCard Servs, Inc., 926 F.2d at 1201; see Servicemasters Legal Defense Network, 471 F. Supp. 2d at 85 (same). During the course of this lawsuit, ICE shared its informal search protocols with Plaintiffs and answered Plaintiffs' questions about its informal search protocols. ECF No. 32 (Joint Status Report) at PageID #124, ¶¶ 3, 5. ICE also twice asked Plaintiffs to share any specific information that would point to the existence of operational policies or procedures responsive to the Request that were not previously produced, and indicated that it would consider that information as appropriate. Id. at PageID #124, ¶ 4; id. at PageID #125, ¶ 11. To date, Plaintiffs have provided no such specific information. Plaintiffs' speculative assertion that unspecified operational policies or procedures regarding ICE's Scarborough facility may exist does not undermine the adequacy of ICE's

search, as demonstrated by the Pineiro Declaration.

## **CONCLUSION**

For the foregoing reasons, ICE respectfully requests that the Court grant its motion for summary judgment.

Respectfully submitted,

DARCIE N. MCELWEE
United States Attorney

Dated: October 14, 2022
       Portland, Maine

/s/ Katelyn E. Saner
Katelyn E. Saner
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street
East Tower, 6th Floor
Portland, ME 04101
(207) 780-3257
Katelyn.Saner@usdoj.gov
*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on October 14, 2022, I electronically filed the foregoing using the CM/ECF system, which will send electronic notifications of such filing to all counsel of record.

                DARCIE N. MCELWEE
                United States Attorney

                /s/ Katelyn E. Saner
                Katelyn E. Saner
                Assistant United States Attorney
                U.S. Attorney's Office
                100 Middle Street
                East Tower, 6th Floor
                Portland, ME 04101
                (207) 780-3257
                Katelyn.Saner@usdoj.gov
                *Counsel* for *Defendant*