UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IMMIGRANT LEGAL ADVOCACY PROJECT and AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION,<br><br>　　　　　　*Plaintiffs*,<br><br>　　v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>　　　　　　*Defendant*. | Case No. 2:21-cv-00066 |

## **PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

In this Freedom of Information Act ("FOIA") case, Plaintiffs American Civil Liberties Union of Maine Foundation and Immigrant Legal Advocacy Project seek public records regarding a new Immigrations and Customs Enforcement ("ICE") detention facility constructed in Scarborough, Maine. [Plaintiffs' Statement of Material Facts ("PSMF") ¶ 6.] Plaintiffs' request specifically seeks "any records regarding policies for immigration detention" at the Scarborough facility. Some documents have been identified and produced. But, despite Defendant's obligation to conduct a reasonable search and to interpret Plaintiffs' request broadly, Defendant has interpreted the request too narrowly and has failed to conduct a search reasonably calculated to identify all responsive documents. Given ICE's history of maltreating the people in its care, the strong public interest in the ICE facility in Scarborough, and ICE's legal obligations under FOIA, the Court should compel Defendant to conduct a reasonable search and to produce all responsive documents in its possession.

## **BACKGROUND**

1

ICE is a federal agency tasked with enforcing federal statutes related to immigration.[1] This enforcement includes detaining people in facilities nationwide—in the 2022 fiscal year, 306,979 people were booked into ICE detention facilities across the country.[2]

Plaintiffs have particular concerns about the safety of ICE facilities given ICE's documented failure to provide detainees with necessary medical care. For example, during the height of the COVID-19 pandemic, multiple courts found that detained people with medical vulnerabilities were entitled to expedited release from ICE custody because ICE could not ensure their safety.[3] Even before the pandemic, a 2017 investigation by Human Rights Watch identified "serious lapses in health care that have led to severe suffering and at times the preventable or premature death" of individuals in ICE facilities.[4] And despite laws requiring ICE to publish data that would give the public basic information about its activities (for example, the number of facilities it operates and the number of people detained under certain statutes), ICE has regularly failed to meet those obligations.[5] It is therefore unsurprising that when the new ICE facility in Scarborough became public knowledge, the people of Scarborough were dismayed and sought (unsuccessfully) to prevent the facility from being built.[6]

Against this backdrop, in January 2021 Plaintiffs submitted a FOIA request seeking, among other things, "any records regarding policies for immigration detention" at the ICE facility in Scarborough, Maine. PSMF ¶ 7 (citing Plaintiffs' FOIA Request, Request 8). These records would shed light on ICE's activities in Scarborough and its treatment of people detained

---

[1] U.S. Immigration & Customs Enf't, *ICE* https://www.ice.gov/.
[2] U.S. Customs & Immigration Enf't, *Detention Management*, https://www.ice.gov/detain/detention-management.
[3] *Yanes v. Martin*, 464 F.Supp.3d 467 (D.R.I. 2020); *Gomes v. US Dep't of Homeland Sec.,* 460 F.Supp.3d 132 (D.N.H. 2020).
[4] Human Rights Watch, *Systemic Indifference: Dangerous & Substandard Medical Care in US Immigration Detention,* at 1 https://www.hrw.org/sites/default/files/report_pdf/usimmigration0517_web_0.pdf (May 8, 2017).
[5] *Id.* at 19.
[6] *Minutes, Scarborough Town Council, Wednesday-February 17, 2021*, https://drive.google.com/file/d/1kQN5aOA0GYUMyGEXfGGDiyFsnfct0N_n/view.

there. Nearly two years later, Defendants have not produced a single policy regarding immigration detention in Scarborough and its search for documents regarding policies remains deficient. PSMF ¶ 15. To vindicate the public's right to know what its government is doing, Defendant must be compelled to conduct a reasonable search and produce responsive records.

## ARGUMENT

**I.      FOIA Requires Defendant to Interpret Plaintiffs' Requests "Liberally" and Demonstrate "Beyond Material Doubt" that Their Search was Reasonably Calculated to Find All Relevant Records.**

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *ACLU of Maine v. DHS*, No. 2:18-CV-00176-JDL, 2019 WL 2028512, at *1 (D. Me. May 8, 2019) (quoting *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). "FOIA requires federal agencies to promptly release records in response to a request for production," and "authorizes federal courts 'to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Id.* (quoting 5 U.S.C. §§ 552(a)(3)(A)), 552(a)(4)(B)).

It is the government's burden "to establish that it has made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *ACLU of Massachusetts v. ICE*, 448 F. Supp. 3d 27, 42 (D. Mass. 2020) (quotations omitted). "The agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Heartland All. for Human Needs & Human Rights v. ICE*, 406 F.Supp.3d 90, 111 (D.D.C. 2019) (quotations and citation omitted) (finding ICE's search partially inadequate). The agency's search affidavit must be "reasonably detailed [and] nonconclusory." *Rubman v. USCIS*, 800 F.3d 381, 387 (7th Cir. 2015).

The government's burden to demonstrate a reasonable search is especially high for ICE,

3

the Defendant here: because ICE does not have a central, agency-wide document repository that can be searched, in FOIA cases its search affidavit must provide "testimony about each program office's record keeping practices [to] show that its search process was reasonably calculated to uncover all responsive documents." *Diocesan Migrant & Refugee Servs., Inc. v. ICE*, 2020 WL 7706275 at *6 (W.D. Tex. 2020) (compelling ICE to conduct a new search and to provide the plaintiff with a staff directory so that plaintiff could determine appropriate custodians and search terms).

Moreover, agencies responding to FOIA requests must "construe request[s] liberally . . . particularly when a request is reasonably susceptible to a broader reading." *New Orleans Workers' Ctr. for Racial Justice v. ICE*, 373 F.Supp.3d 16, 34 (D.D.C. 2019) (quotations and citation omitted) (finding that ICE had interpreted plaintiff's FOIA request too narrowly). The FOIA defendant "must be careful not to read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester. To conclude otherwise would frustrate the central purpose of the Act." *Hemenway v. Hughes*, 601 F.Supp. 1002, 1005 (D.D.C. 1985). As a result, when a request seeks "any records relating to policies or procedures," the government is obligated to search for both policies *and* documents related to the policies. *Knight First Amendment Inst. at Columbia Univ. v. CDC*, 560 F.Supp.3d 810, 821 (S.D.N.Y. 2021).

When challenging an agency's search, a requester must put forth "some reason to think that [a] document would have turned up if the agency had looked for it," but FOIA jurisprudence recognizes that "neither the requester nor the court know the content of the agency's records [so] this is a low bar." *Stevens v. ICE*, 432 F.Supp.3d 752, 761 (N.D. Ill. 2020) (quoting *Rubman*, 800 F.3d at 387).

4

## II.     **Defendant Failed to Conduct a Reasonable Search in Response to Plaintiffs' Request for "Any Records Regarding Policies" for Immigration Detention at the Planned Scarborough facility.**

Defendant's search was unreasonable and must be rejected because it interpreted Plaintiffs' request for "any records regarding policies for immigration detention" too narrowly and was not reasonably calculated to uncover all relevant documents.

It is undisputed that Plaintiffs requested "any records regarding policies for immigration detention" at the Scarborough facility. [PSMF ¶ 7]. Records *regarding* policies includes a wide range of documents: not just the policies themselves but documents such as drafts of those policies; email, chat, and text correspondence among Defendant's staff concerning the policies; and any discussion, documented in any format, regarding implementation or creation of policies.

Defendant's searches were not reasonably calculated to uncover all responsive documents "regarding policies for immigration detention" at the new facility. Although Defendant does not identify which searches were intended to respond to which requests, only four of the described searches can be plausibly understood to look for documents regarding policies: (1) Defendant searched two databases in the ERO's Policy Office "using the terms 'Scarborough' and 'detention'" [Doc. No. 35, Defendant's Statement of Undisputed Material Facts ("DSMF") ¶ 10]; (2) one person "involved in plans for ERO facilities" in Maine searched his email for the term 'Scarborough [*Id.* ¶ 13] ; (3) a second person "involved in plans for ERO facilities" in Maine searched his email for the term 'Scarborough office' [*Id.* ¶ 14]; and (4) the former person "involved in plans for ERO facilities" in Maine also searched his computer files for the term 'Scarborough.' [*Id.* ¶ 13]. Rather than broadly construing Plaintiffs' request as required by law, Defendant conducted searches that were inconsistent and overly narrow as to the custodians

5

identified, the locations searched, and the keywords used. Defendant must be compelled to conduct new, reasonable searches.

> i. *Two individual officials' searches of their email and (in one case) computer files were not reasonably calculated to discover all responsive documents regarding policies for immigration detention.*

The email and computer file searches described in paragraphs 24 and 25 of the Pineiro affidavit were not reasonably designed to uncover all relevant records "regarding policies for immigration detention" at the facility.

Defendant has failed to provide facts that would allow the Court and Plaintiffs to thoroughly evaluate its search for documents regarding policies. Unlike the facts accompanying its search of the policy library and the Office of Acquisition Management, Defendant provides no facts showing why the two people who searched their emails are the *only* two people who might have documentation regarding policies. *Compare* DSMF ¶¶ 16, 18, 19 *with* DSMF ¶ 11. And again unlike its search of the policy library and Office of Acquisition Management, Defendant provides no explanation for where and how documents regarding policies might be stored or organized. This failure is especially problematic for Defendant here, because courts have recognized that ICE in particular must err on the side of providing more information on its record-keeping practices given that it has no central document repository. *Diocesan & Migrant Refugee Servs*, 2020 WL 7706275 at *6.

Moreover, Defendant does not explain why one person "involved in plans for ERO facilities" in Maine searched his computer files for the term 'Scarborough,' while the other did not search his computer files at all. Nor does Defendant explain why one such person used the search term 'Scarborough' (by itself), while the other used the terms 'Scarborough office' and 'Scarborough office lease,' but not 'Scarborough' alone. *Compare* DSMF ¶ 13 *with* DSMF ¶ 14.

This discrepancy in search terms and locations, even standing alone, is enough for the Court to find that Defendant's search was unreasonable. *Tushnet v. ICE,* 246 F.Supp.3d 422, 434 (D.D.C. 2017) (finding that ICE's use of different search terms across different offices undermined reasonableness of search and compelling ICE to conduct further searches).

But those unexplained inconsistencies are not all. Defendant also offers no explanation for how the search term "Scarborough office" could adequately capture documentation that references Scarborough but does not use the precise phrasing of "Scarborough office" (even though such documentation could be responsive). *See Nat'l Day Labor Organizing Network v. ICE*, 877 F.Supp.2d 87, 107 (S.D.N.Y. 2012) (noting how search results may vary depending on how precisely search terms are combined and deployed and compelling ICE to conduct further searches). This matters greatly because the officer who used the term 'Scarborough office' did not conduct any search with the word 'Scarborough' alone—but presumably documents containing the word 'Scarborough' would be responsive to Plaintiffs' request. DSMF ¶ 14.

Because Defendant's search for documents regarding policies was not reasonably calculated to discover all responsive documents, Defendant must be compelled to conduct a reasonable search.

> ii. *Defendant's search of ERO's Policy Office was not reasonably calculated to discover all responsive documents regarding policies for immigration detention.*

To identify "policies for immigration detention" at the ICE facility in Scarborough, Defendant searched two databases within the Office of Enforcement and Removal Operations' ("ERO") Policy Office. DSMF ¶ 10 *citing* Doc. No. 34, Affidavit of Fernando Pineiro ("Pineiro Affidavit").[7] Piniero's affidavit is ambiguous as to exactly what searches were performed, but no

---

[7] Although Defendant does not specifically identify which request this specific search was intended to find records for, common sense dictates that a search of policies was intended to identify policies. Nothing in the search affidavit

matter how the affidavit is interpreted, it is clear that Defendant's search of the Policy Office was not reasonably calculated to uncover all responsive documents.

Pineiro's affidavit states that the two databases searched within the ERO Policy Office are the only two databases containing ICE's policies; that the databases were searched "using the terms 'Scarborough' and 'detention;'" and that this search "yielded no records." DSMF ¶ 10 *citing* Pineiro Affidavit ¶ 21 (describing ERO search and stating that the two places searched within the ERO Policy Office "are the only databases that contain ICE-wide and ERO-specific policies."). Plaintiffs understand paragraph 21 of the Pineiro affidavit to mean that Defendant performed two separate searches of the ERO databases: one search for the word 'detention,' and one search for the word 'Scarborough.' If this understanding is accurate, the results of Defendant's search are implausible: even a simple search of ICE's website yields multiple policies that contain the word 'detention,' apply throughout ICE, and reference ERO directly. For example, the agency promulgates ICE-wide detention standards that contain the word 'detention,'[8] and ICE also produces documents labeled both 'directives' and 'policies' that contain the word 'detention.'[9] A search of all ICE-wide or ERO-specific policies that contain the

---

suggests that any of the other searches utilized the word 'policy,' were within places where policies might be located, or were within the email accounts of people who are specifically involved with ICE or ERO policy.

[8] U.S. Immigration & Customs Enf't, *ICE Detention Standards,* https://www.ice.gov/factsheets/facilities-pbnds (Nov. 9, 2021) (repeatedly identifying standards as developed/revised by ICE and stating that they apply to "the agency's detention system"); U.S. Immigration & Customs Enf't, *2011 Operations Manual ICE Performance-Based National Detention Standards,* https://www.ice.gov/detain/detention-management/2011 (Feb. 18, 2022) (noting ERO responsibilities under the detention standards).

[9] U.S. Immigration & Customs Enf't, *Directive: Identification and Monitoring or Pregnant Detainees,* https://www.ice.gov/detain/directive-identification-and-monitoring-pregnant-detainees, (Dec. 14, 2017) (stating the Directive applies to all "pregnant detainees in U.S. Immigration and Customs Enforcement custody" and listing out ERO field director responsibilities under the policy); U.S. Immigration & Customs Enf't, *Directive: Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals,* https://www.ice.gov/directive-identification-and-monitoring-pregnant-postpartum-or-nursing-individuals (Jul. 1, 2021) (stating the Directive applies to all "individuals known to be pregnant, postpartum, or nursing in U.S. Immigration and Customs Enforcement" and referencing ERO official repeatedly and identifying certain positions with ERO as "headquarters responsible officials); U.S. Immigration & Customs Enf't, *Sexual Abuse and Assault Prevention and Intervention* https://www.ice.gov/doclib/detention-reform/pdf/saapi2.pdf (May 22, 2014) (stating the Directive "establishes policy and procedures for the prevention of sexual abuse or assault of individuals in U.S. Immigration and Customs Enforcement custody" and describing ERO responsibilities under the policy at 3-4).

word 'detention' should have yielded these policies—it should not have yielded no documents.

Alternatively, if paragraph 21 of the Pineiro affidavit instead means that Defendant conducted a single search of the Policy Office databases using the terms 'Scarborough' and 'detention' together (meaning Defendant used search terms such as "Scarborough AND detention"), the search was still not reasonably calculated to uncover responsive documents. The publicly available policies identified above show that Defendant does not organize its policies by detention location. The policies do not reference specific detention locations or facilities at all. Instead, the policies are organized by type of facility. A search limited to policies referencing a specific detention facility by name is, based on publicly available policies, not a reasonable search. Because Defendant's search of the Office was not reasonably calculated to discover all responsive documents—under either interpretation of its affidavit—it must be compelled to conduct a reasonable search.

      iii.    *Defendant interpreted Plaintiffs' request for "any records regarding policies for immigration detention" too narrowly.*

Defendant's responses in the parties' pre-briefing discussions further demonstrate that Defendant failed to interpret Plaintiffs' request for any documents regarding policies "liberally" as required by law. *New Orleans Workers' Ctr.,* 373 F.Supp.3d at 34.

The parties engaged in pre-briefing discussions with the primary goal of narrowing the contested redactions. [PSMF ¶ 16]. In the course of those discussions, Defendant asked Plaintiffs to provide exemplar responsive documents. *Id.* ¶ 18. In response, Plaintiffs provided two examples of documents which, if disclosed, would be responsive to its request for "any records regarding policies" for immigration detention at the Scarborough facility: 1) entries from ICE's Deportable Alien Control System for those people detained at Scarborough and 2) any ERO Inspection Report for an inspection conducted at the Scarborough facility. *Id* ¶ 19. After being

told that Defendant would not produce those documents, Plaintiffs sought clarification and emphasized that these documents should be considered "records regarding policies for immigration detention." *Id.* ¶¶ 21, 23, 25. Defendant responded, through counsel, that the Inspection Reports were outside the scope of Plaintiffs' request because they were "neither a plan nor policy about immigration detention at the Scarborough facility." *Id.* ¶ 26.

These exemplar documents are plainly responsive to Plaintiffs' broad request for "any records regarding policies for immigration detention," and Defendant's refusal to produce them highlights the unreasonably narrow and rigid interpretation it applied to Plaintiffs' request. ERO Inspection Reports are forms that use qualitative and quantitative measures to assess how a given ICE facility does or does not align with ICE's detention standards and includes extensive review of a facility's written policies.[10] They are, therefore "records regarding policies for immigration detention" by any understanding of the phrase—they are records that discuss, address, and concern policies for immigration detention. That Defendant does not consider ERO reports responsive documents raises serious questions about its interpretation of the request. Defendant's June 2 email indicates that ICE interpreted Plaintiffs' request to seek only policies and not documents regarding policies—an interpretation that goes against the plain language of the request and the FOIA mandate to interpret requests broadly. *See Knight First Amendment Inst.*, 560 F.Supp.3d at 821 (when a request seeks "any records relating to policies or procedures," the government must search for *both* policies *and* documents related to the policies). Defendant has interpreted Plaintiffs' request too narrowly, and should be compelled to undertake a properly responsive, broader search. *New Orleans Workers' Ctr. for Racial Justice.*, 373 F.Supp.3d 16, 70.

---

[10] *See, e.g.*, Dep't of Homeland Security, *Condition of Confinement Inspection Worksheet* (Feb. 25, 2016), https://embed.documentcloud.org/documents/6575012-2016-ERO-Inspection-Otero-County-Processing.

In sum, Defendant has failed to demonstrate "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Heartland Alliance*, 406 F.Supp.3d 90, 111. Defendant's limited search of its policy databases was not reasonably calculated to discover all responsive documents; the searches conducted by just two officers used overly narrow and inconsistent search terms and were inexplicably narrow as to the locations searched; and Defendant's pre-briefing discussions demonstrate that Defendant failed to interpreted Plaintiffs' request broadly as required by law. Plaintiffs have more than met the "low bar" necessary to demonstrate that documents would have shown up had Defendant looked for them. The Court should reject Defendant's assertion that its search was reasonably calculated to turn up all responsive documents and compel it to conduct a reasonable search.

## **CONCLUSION**

For the foregoing reasons, the Court should find that Defendant has failed to conduct a reasonable search; and compel Defendant to conduct a proper search and disclose responsive documents.

Dated: November 14, 2022

/s/ Anahita D. Sotoohi
Anahita D. Sotoohi
American Civil Liberties Union of Maine Foundation
PO Box 7860
Portland, Maine 04112
(207) 613-4350
*asotoohi@aclumaine.org*

/s/ Carol J. Garvan
Carol J. Garvan
American Civil Liberties Union of Maine Foundation
PO Box 7860
Portland, Maine 04112
*cgarvan@aclumaine.org*

/s/ Zachary Heiden
Zachary Heiden

             American Civil Liberties Union of Maine
             Foundation
             PO Box 7860
             Portland, Maine 04112
             *zheiden@aclumaine.org*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2022, I electronically filed the foregoing using the CM/ECF system, which will send electronic notifications of such filing to all counsel of record.

Dated: November 14, 2022

/s/ Anahita D. Sotoohi
Anahita D. Sotoohi
American Civil Liberties Union of Maine Foundation
PO Box 7860
Portland, Maine 04112
(207) 613-4350
*asotoohi@aclumaine.org*