## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

IMMIGRANT LEGAL ADVOCACY PROJECT )
and AMERICAN CIVIL LIBERTIES UNION )
OF MAINE FOUNDATION, )
                         )
          Plaintiffs, )
                         )
      v. )      Case No. 2:21-cv-00066-JAW
                         )
U.S. IMMIGRATION AND CUSTOMS )
ENFORCEMENT, )
                         )
          Defendant. )

## DEFENDANT'S COMBINED OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT & REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DARCIE N. MCELWEE
UNITED STATES ATTORNEY

/s/ *Katelyn E. Saner*
Katelyn E. Saner
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street
Portland, ME 04101
(207) 780-3257
katelyn.saner@usdoj.gov

## PRELIMINARY STATEMENT

ICE produced approximately 1,930 pages of documents in response to the FOIA request at issue in this case. These productions were the result of the agency's reasonable search and review of records. Plaintiffs' Motion for Summary Judgment ("Pls.' MSJ," ECF No. 39) and Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Pls.' Opp. to Def.'s MSJ," ECF No. 37) do not offer any specific information that would point to the existence of operational policies or procedures relating to immigration detention at the Scarborough facility that were not previously produced.

Instead, Plaintiffs' filings focus on the agency's non-production of entries from the agency's Deportable Alien Control System ("DACS") and ERO inspection reports for the Scarborough facility, as well as certain search terms the agency used, among other critiques. Without conceding its defenses, in the spirit of continued cooperation, ICE has now conducted two supplemental searches to address, and resolve, Plaintiffs' concerns about the ERO inspection reports and individual custodians' search terms. Despite these supplemental searches, Plaintiffs continue to believe that the agency's search was inadequate. As detailed herein, DACS is a tracking database of individual detainee information that is neither a policy nor procedure, nor a record regarding a policy or procedure, and thus the agency's non-search of this database does not demonstrate inadequacy. Further, the agency's use of the search term "Scarborough," a term directly contained in Plaintiffs' FOIA request, to search the ICE Policy Manual and ERO Policy Library repositories for policies about the Scarborough facility, was reasonable. Plaintiffs' remaining arguments are likewise unpersuasive, and summary judgment should enter in full for ICE.

## ARGUMENT

I.   **ICE CONDUCTED A REASONABLE SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFFS' REQUEST.**

    **A. ICE Did Not Construe the Plain Language of Item 8 in Plaintiffs' FOIA Request Too Narrowly.**

Plaintiffs first claim that ICE's search was inadequate because the agency effectively read the words "records regarding" out of Item 8 ("records regarding policies for immigration detention at the ICE facility in Scarborough"). Pls.' MSJ (ECF No. 39) at PageID #232-33; Pls.' Opp. to Def.'s MSJ (ECF No. 37) at PageID #183-85. As ICE's Motion for Summary Judgment (the "Motion") demonstrates, ICE's search was not limited to a search of policies about immigration detention at Scarborough. See Def.'s MSJ (ECF No. 36) at PageID #164-67, 172-74. Instead, the search was reasonably calculated to discover documents responsive to the plain language of the Request. See id. (explaining why multiple offices searched multiple record systems and detailing those searches, which included search terms such as "CCJ," "COVID," "Cumberland," "Detainee transfers," "ICE transfers," "Maine," "Scarborough," "Sheriff Kevin Joyce," and "Zoning approval"). Therefore, there is no basis to conclude that ICE's search necessarily excluded "records regarding" policies.

In support of its view, Plaintiffs point to two types of records that it believes should have been produced because they are, purportedly, "records regarding policies" about immigration detention at Scarborough. Pls.' MSJ (ECF No. 39) at PageID #232; Pls.' Opp. to Def.'s MSJ (ECF No. 37) at PageID #184. ICE responds to each in turn below.

**First,** Plaintiffs argue that ERO inspection reports for the Scarborough facility, should any exist, are "records regarding policies for immigration detention" because these reports assess how a facility meets (or does not meet) ICE's detention standards and include also a review of

the facility's written policies.[1] Pls.' MSJ (ECF No. 39) at PageID #232-33; Pls.' Opp. to Def.'s MSJ (ECF No. 37) at PageID #184. This issue is no longer live. Without conceding its defenses, in the interest of transparency and cooperation, the Supplemental Declaration of Fernando Pineiro dated December 16, 2022 (the "Pineiro Supplemental Declaration") and the Second Supplemental Declaration of Fernando Pineiro dated January 23, 2023 (the "Pineiro Second Supplemental Declaration) appended hereto at ECF Nos. 45 and 46 establish that in December 2022, ICE conducted a supplemental search for ERO inspection records relating to the Scarborough facility, and no responsive records were located. Def.'s AF ¶ 6.[2]

**Second,** Plaintiffs highlight unspecified "entries" from the Deportable Alien Control System ("DACS") for persons detained at Scarborough without an explanation of how entries from this system are a "record[] regarding policies for immigration detention." Pls.' MSJ (ECF No. 39) at PageID #232; Pls.' Opp. to Def.'s MSJ (ECF No. 37) at PageID #184. Without any evidence to support their view, Plaintiffs have forfeited this argument. Nevertheless, on the merits, DACS is plainly not a policy or procedure, nor a record regarding a policy or procedure encompassed by the Request. Def.'s AF ¶ 4. In contrast, DACS is a case management system that tracks detainees, including without limitation the detainee's place of incarceration,

---

[1] ICE's "Facility Inspections" webpage further explains that "ICE's inspection process provides firm assurance that detainees in ICE custody are housed in the least restrictive environment consistent with the safety and security of the detained population and orderly facility operations. The annual detention inspection, conducted by an independent third-party contractor, ensures that facilities remain in compliance with ICE's standards and that any deficiencies noted are immediately resolved by facility management. Beginning with May 2018, ICE is posting all facility inspection reports submitted by the third-party contractor. The reports are posted below in chronological order within 60 days of inspection. In addition, starting in June 2019 ICE is posting all Family Residential Center inspection reports." ICE Facility Inspections, available at https://www.ice.gov/detain/facility-inspections (last accessed Jan. 26, 2023). The Scarborough facility is not listed as a detention facility on ICE's "Detention Facilities" webpage. ICE Detention Facilities, available at https://www.ice.gov/detention-facilities (last accessed Jan. 26, 2023). It is listed as a "[c]heck-[i]n [l]ocation" on ICE's "Check-In Locations" webpage. ICE Check-in Locations, available at https://www.ice.gov/contact/check-in (last accessed Jan. 26, 2023).

[2] References to "Def.'s AF" are to Defendant's Additional Statement of Undisputed Material Facts (ECF No. 48 at PageID #309-11).

identification number, data and type of conviction, release date, and appropriate criminal charge record. Id. ICE's interpretation of the Request to not encompass voluminous detainee-specific entries from DACS (much of which is personally sensitive or personally identifying information) was reasonable, and should be sustained. To conclude differently would mean that any and all entries in any of the databases that any federal agency maintains could also conceivably be considered a "record regarding a policy," which would amount to unduly burdensome "all-encompassing fishing expedition[s]" not required by FOIA. Dale v. I.R.S., 238 F. Supp. 2d 99, 105 (D.D.C. 2002).[3]

**B. ICE's Use of the Term "Scarborough" for the ERO Policy Office's Search Was Reasonable Where Item 8 Seeks "[R]ecords [R]egarding [P]olicies for [I]mmigration [Detention] at the ICE [F]acility in [S]carborough."**

Next, Plaintiffs contend that the Declaration of Fernando Pineiro dated August 30, 2022 (the "Pineiro Declaration") at ECF No. 34 lacks sufficient detail about the ERO Policy Office's search of the ICE Policy Manual and the ERO Policy Library, which together are the only two databases that contain ICE-wide and ERO-specific policies. Pls.' MSJ (ECF No. 39) at PageID #230-32; Pls.' Opp. to Def.'s MSJ (ECF No. 37) at PageID #181-83. Specifically, Plaintiffs argue that it is unclear whether the terms "Scarborough" and "detention" were searched separately or together. Pls.' MSJ (ECF No. 39) at PageID #231-32; Pls.' Opp. to Def.'s MSJ (ECF No. 37) at PageID #182-83. The Pineiro Supplemental Declaration filed herewith clarifies that the ERO Policy Office's search was for "Scarborough AND detention" together, and that

---

[3]   Additionally, the ACLU's prior FOIA requests in other districts demonstrate that Plaintiffs know how to and have historically requested individualized detention data in the plain language of their FOIA request. For instance, in ACLU v. USCIS, 19-cv-7058 (S.D.N.Y.), the ACLU's FOIA request expressly sought numerous categories of individualized removal and detention data. See Def.'s AF ¶ 7. Here, any such particularity is conspicuously absent from the Request. Defendant is thus under no obligation to expand its search efforts to include also individualized sensitive detention data beyond the four corners of the Request. See Coss v. United States Dep't of Just., 98 F. Supp. 3d 28, 34 (D.D.C. 2015) ("Although FOIA requires an agency to produce all records 'reasonably described,' a FOIA plaintiff may not expand the scope of his request once his original request is made.").

ICE subsequently searched the ICE Policy Manual and ERO Policy Library for "Scarborough" alone (without "detention"), which resulted in no responsive records. Def.'s AF ¶ 1.

FOIA does not require an exhaustive search; it requires a reasonable search. Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 58 (D.C. Cir. 1990). The ICE Policy Manual and ERO Policy Library repositories are the only databases that contain ICE-wide and ERO-specific policies. SMF ¶ 10[4]. These repositories are searchable via natural language search engine, and it would be unduly burdensome for an employee to sift through and review for responsiveness the entirety of the ICE Policy Manual and the ERO Policy Library without any limiting terms. SMF ¶ 10; Def.'s AF ¶ 1. Where, as here, search terms are used, FOIA permits federal agencies "discretion to craft the search terms they believe to be reasonably tailored to uncover documents responsive to a FOIA request." Brennan Ctr. for Just. at New York Univ. Sch. of L. v. DOJ, 377 F. Supp. 3d 428, 434 (S.D.N.Y. 2019). In this case, ICE's employees were permitted to use their discretion, based on their operational knowledge and subject matter expertise, in choosing the search locations and terms utilized. Def.'s MSJ (ECF No. 36) at PageID #164. It was reasonable for ICE to apply a search term directly contained within Item 8 of the Request ("Scarborough") in searching the ICE Policy Manual and ERO Policy Library for documents "regarding policies for immigration detention at the ICE facility in Scarborough." ECF No. 38-2 (Pls.' FOIA Request).

### C.  Plaintiffs' Remaining Attacks on ICE's Search Do Not Establish Inadequacy.

Plaintiffs remaining attacks on the searches conducted by ICE do not establish that the agency's search was either unreasonable or inadequate.

**First,** Plaintiffs claim that the search was deficient because (a) the custodian identified at

---

[4]    References to "SMF" are to Defendant's Statement of Undisputed Material Facts (ECF No. 35 at PageID #152-59)

Paragraph 24 of the Pineiro Declaration searched both his computer files and email for records, whereas the custodian identified at Paragraph 25 only searched his email for records, and (b) the custodian identified at Paragraph 24 used the term "Scarborough" (among other terms), whereas the custodian identified at Paragraph 25 used the terms "Scarborough office" and "Scarborough office lease" (among other terms). See Pls.' MSJ (ECF No. 39) at PageID #230-31; Pls.' Opp. to Def.'s MSJ (ECF No. 37) at PageID #181. In the spirit of cooperation and without conceding any of ICE's defenses, the custodian at Paragraph 25 has now conducted a supplemental search that moots Plaintiffs' concerns. Specifically, in December 2022, this custodian conducted a supplemental search of both his computer files and email using the standalone term "Scarborough" (as well as other terms for his computer file search) and 77 supplemental pages of responsive documents (comprising of four documents) were produced to Plaintiffs on January 27, 2023. Def.'s AF ¶ 3.  Plaintiffs' concerns with this custodian's search are thus no longer live, and do not provide a basis for a finding of inadequacy.

**Second,** Plaintiffs claim that the search was inadequate because the Pineiro Declaration does not equivocate that the ICE custodians who searched their emails and files are the only ICE employees who "might have documentation about policies." Pls.' MSJ (ECF No. 39) at PageID #229; Pls.' Opp. to Def.'s MSJ (ECF No. 37) at PageID #180. This misstates what FOIA requires. "While it is always true that an agency can engage in a more expansive search for responsive documents, the government is not required to search everywhere a document might be." Judicial Watch, Inc. v. U.S. Dep't of Housing and Urban Dev., 20 F. Supp. 3d 247, 254 (D.D.C 2014) (emphasis omitted). Instead, agencies are required to search only "those places where a document is [reasonably] likely to be," not all places where a document conceivably "might" be. Id. (emphasis omitted); see, e.g., Sephton v. F.B.I., 442 F.3d 27, 29 (1st Cir. 2006)

6

("Applying our precedent, the district court recognized that although [the plaintiff] might prefer the [Government] to search every file that might conceivably contain responsive information, FOIA requires a 'reasonable' search, not an exhaustive one."). In short, FOIA does not require a limitless number of ICE employees who conceivably "might" have "documentation about policies" to all also search their files.

ICE's filings establish that the agency met its burden to demonstrate adequacy with respect to its employees' computer and file searches. The agency did not randomly select three employees. Instead, the agency tasked three employees (one supervisor and two directors) in the ERO Boston Field who collectively were the only directors and/or supervisors that oversaw operations in Maine and/or would be involved in plans for ERO facilities in Maine to search for responsive records based on the likelihood that those three employees would have responsive records. The ERO Policy Office also searched the ICE Policy Manual and the ERO Policy Library, and the agency ultimately determined that all locations reasonably likely to contain records responsive were searched. Def.'s MSJ (ECF No. 36) at PageID #164-67; Def.'s AF ¶ 2.

**Third,** Plaintiffs' claim that the Pineiro Declaration does not explain "where or how documents regarding policies might be stored or organized," and therefore the search was inadequate. Pls.' MSJ (ECF No. 39) at PageID #229; Pls.' Opp. to Def.'s MSJ (ECF No. 37) at PageID #180. As an initial matter, the agency's declarations submitted herewith adequately detail that the ICE Policy Manual and ERO Policy Library are the only databases that contain ICE-wide and ERO-specific policies, and explain why and how ICE decided to search those two databases for policies and procedures relating to the Scarborough facility. SMF ¶ 10.

Plaintiffs' demanding request for "meticulous documentation" about the storage and organization of documents regarding unspecified policies is not required by FOIA. Defs. of

<u>Wildlife v. U.S. Border Patrol</u>, 623 F. Supp. 2d 83, 91-92 (D.D.C. 2009) (internal quotation marks and citation omitted). In contrast, it is well-established that an agency can demonstrate adequacy by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if any such records exist) were searched." <u>Valencia–Lucena v. U.S. Coast Guard</u>, 180 F.3d 321, 326 (D.C. Cir. 1999 (internal quotation marks and citation omitted). Again, as ICE's Motion establishes, ICE has met its burden to demonstrate that it conducted a reasonable search of the only databases that contain ICE-wide and ERO-specific policies, as well as reasonable searches by the only three directors and/or supervisors that oversaw operations in Maine and/or would be involved in plans for ERO facilities in the state of Maine, and includes an averment that "all locations reasonably likely to contain records were searched." <u>See</u> Def.'s MSJ (ECF No. 36) at PageID #164-67; <u>see also</u> ECF No. 34 (Pineiro Decl.) ¶ 15. ICE has also consistently cooperated with Plaintiffs in good faith to address Plaintiffs' concerns regarding unspecified operational policies, including (a) a supplemental follow-up by the FOIA POC to confirm that no operational policies or procedures regarding detention at the Scarborough facility were inadvertently overlooked; (b) multiple offers to Plaintiffs that the agency would consider as appropriate specific information shared by Plaintiffs that pointed to the existence of any such policies responsive to the Request; and (c) two supplemental searches during the pendency of the parties' summary judgment briefing. Def.'s MSJ (ECF No. 36) at PageID #174-75; Def.'s AF ¶¶ 3, 6.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, ICE respectfully requests that the Court grant its motion for summary judgment and deny Plaintiffs' cross-motion for summary judgment.

8

Respectfully submitted,

DARCIE N. MCELWEE
UNITED STATES ATTORNEY

Dated: January 30, 2023
          Portland, Maine

/s/ Katelyn E. Saner
Katelyn E. Saner
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street
Portland, ME 04101
(207) 780-3257
Katelyn.Saner@usdoj.gov

9

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2023, I electronically filed the foregoing using the CM/ECF system, which will send electronic notifications of such filing to all counsel of record.

DARCIE N. MCELWEE
UNITED STATES ATTORNEY

/s/ Katelyn E. Saner
Katelyn E. Saner
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street
Portland, ME 04101
(207) 780-3257
Katelyn.Saner@usdoj.gov

10