## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

IMMIGRANT LEGAL ADVOCACY
PROJECT and AMERICAN CIVIL
LIBERTIES UNION OF MAINE
FOUNDATION,

<em>Plaintiffs</em>,

v.

Case No. 2:21-cv-00066

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

<em>Defendant.</em>

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiffs' Motion for Summary Judgment (ECF No. 39) asserted that Defendant had failed to conduct a reasonable search for three reasons: first, Defendant had interpreted Plaintiffs' FOIA request too narrowly by failing to search for documents *regarding* policies, despite the plain language of the request; second, Defendant's searches of certain officials' email and computers were too narrow; and third, Defendant's search of the ERO Policy Office was not reasonably calculated to discover responsive documents. In response, Defendant has performed a few additional narrow searches but has still failed to provide Plaintiffs and the Court with the information that would allow a complete assessment of its search and has failed to demonstrate that its search of the ERO Policy Office was reasonably calculated to overturn responsive documents. Plaintiff's Motion for Summary Judgment must be granted, and Defendant must be compelled to conduct a proper search and disclose responsive records.

1

**ARGUMENT**

I.   **Defendant's search of ERO's policy office was not reasonably calculated to discover all responsive documents.**

Plaintiffs' Motion asserted that Defendant's search of the ERO Policy Office was unreasonable because Defendant had searched it using the word "Scarborough" and the search term "Scarborough" was not reasonably calculated to turn up responsive documents because (as publicly available documents demonstrate) ICE policies are often contain no reference to a specific place. (ECF No. 39, Plaintiff Motion for Summary Judgment ("Pl. Motion") at 5, 7-8.) In response, Defendant does not dispute that it was obligated to conduct a reasonable search for policies, and likewise does not dispute that its policies routinely do not refer to a specific location. Instead, to counter, Defendant reiterates that it searched the Office with the phrases "Scarborough AND detention" and "Scarborough," that it was reasonable for Defendant to use those search terms, and that any further search of the Office would be an undue burden. (ECF No. 49, Defendant's Opposition ("Def. Opp.") at 4-5.) This is plainly wrong.

First, Defendant has conceded that a search of the Office using a location-specific term, like Scarborough, is not reasonably likely to turn up responsive documents because policies routinely do not contain references to locations. Defendant has therefore never conducted a reasonable search of the Office, which is concededly the only place Defendant keeps policies. (ECF No. 35, Defendant's Statement of Material Facts ("DSMF") at ¶ 10.) Second, Defendant relies on *Brennan* to assert that it is entitled to "craft the search terms [it] believed reasonably tailored to uncover" responsive documents, but *Brennan* does not support Defendant's position. In *Brennan*, the Court still required the agency defendant to use terms *reasonably tailored* to find necessary documents—but here, Defendant has conceded that the terms it used were not reasonably tailored and were in fact tailored to turn up no documents. *Brennan Ctr. for J. v.*

*DOJ*, 377 F.Supp.3d 428, 434 (S.D.N.Y. 2019). And *Brennan* specifically acknowledged that "an agency's choice of search terms is not conclusive. Where challenged, agencies have to explain why certain search terms, clearly relevant, were not used. . . . With blinkers on, the world can't fully be seen." *Id.* Because Defendant did not use search terms reasonably calculated to turn up responsive documents, *Brennan* is inapplicable.

Finally, Defendant argues that any further search of the Office would be an undue burden because it cannot be searched without limiting terms. (Def. Opp. at 5.) The Court should reject this argument. Defendant has chosen to only search the Office in one specific way (with search terms), rather than allowing itself flexibility depending on the request (for example, using staff knowledge to identify responsive policies). But the Freedom of Information Act does not guarantee the public only those documents that can be located in accordance with an agency's chosen procedures. Instead, FOIA guarantees that any reasonable, properly made request will result in a reasonable search for responsive records. 5 U.S.C. § 552(3)(A). Even accepting as true that the Office can only be searched with keywords (keywords which, ironically, Plaintiffs are unable to propose as they have no pre-existing information concerning the Scarborough facility), Defendant would have to review the policies yielded from those keywords searches to determine which policies actually apply to the Scarborough facility. This process is routine in document production and presents no undue burden; indeed, Defendant previously used a similar process to identify responsive records from another search in this case. (DSMF ¶ 17 (noting that after a staff member provided results of a search to the ICE FOIA Office, the records must still be, and were, reviewed for responsiveness)). And Defendant does not need Plaintiffs to propose the search term "detention," as it used the term previously (albeit incorrectly, in conjunction with "Scarborough"). The Court should compel Defendant to perform a reasonable search of the

3

Office.

## II.    Defendant interpreted Plaintiffs' request for "any records regarding policies for immigration detention" too narrowly.

Plaintiffs asserted that Defendant was obligated to search for documents regarding policies for immigration detention and that Defendant had failed to do so, as demonstrated by its pre-briefing statement that ERO inspection reports were not documents regarding policies. (Pl. Motion at 9-10). Although Defendant counters that it has now searched for ERO inspection reports, this search remains insufficient.

Plaintiffs rely on Defendant's pre-briefing statement to show that it interpreted Plaintiffs' request too narrowly.[1] Defendant has responded *not* by providing any explanation as to how its pre-briefing statement was a 'one off' (or otherwise had no impact on its search) but by addressing the one error directly brought to the Court's attention. This minor concession should not be interpreted as a wholesale revision of Defendant's interpretation of the search.  The Court can and should conclude that there are deficiencies in Defendant's interpretation of the request, particularly in light of Defendant's failure to provide the documentation information necessary for the Court to assess the search.

## III.    Defendant must provide more information on its document organization.

Plaintiffs also asserted, relying on *Diocesan Migrant and Refugee Services,* that Defendant's search should be rejected because Defendant had not provided sufficient information as to its document-keeping practices to allow the Court and Plaintiffs to evaluate its search, and that this failing was particularly evident in Defendant's failure to explain where documents *regarding* policies (separate from the policies themselves) might be stored or

---

[1] Defendant discusses at length the nature of the Deportable Alien Control System and that its contents are not documents regarding policies. Plaintiffs' Motion and Response did not seek any documents related to the System.

4

organized. (Pl. Motion at 4, 6). In response, Defendant re-states its search for policies, and counters that it is not obligated to provide further information. (Def. Opp. at 7-8). Both arguments are incorrect. First, Plaintiffs have repeatedly explained—and Defendant has not disagreed—that Defendant was obligated to search for both policies and documents regarding policies (such as meeting minutes and emails discussing policy application). That Defendant searched for policies is no answer to whether its search for all documents regarding policies was sufficient. Second, to assert that its description is sufficient, Defendant relies on two non-ICE cases. (Def. Opp. at 7-8.) But that does not counter Plaintiffs' point:  that *ICE specifically* must provide more information on its document management policies than other government agencies, because it lacks the central, agency-wide document repository that other agencies have. ICE's search affidavit must contain "testimony about each program office's record keeping practices [to] show that its search process was reasonably calculated to uncover all responsive documents," precisely because the agency lacks a central document repository. *Diocesan Migrant & Refugee Servs., Inc. v. ICE*, 2020 WL 7706275 at *6 (W.D. Tex. 2020). ICE cannot evade its clear responsibilities under FOIA by citing what *other* agencies have done— it is precisely because of ICE's unique lack of centralized procedures and practices for document storage that it must provide the Court with a better picture of how it stores public records.

Defendant offers no counter to the reasoning of the *Diocesan* court and this Court should compel ICE to provide further information about its record-keeping practices. Without any additional explanation of how ICE stores and organizes its records, the Court and Plaintiffs cannot evaluate the adequacy of its search.

## CONCLUSION

It is Defendant's burden to show "beyond material doubt that its search was reasonably calculated to uncover all relevant documents" and it has failed. *Heartland Alliance v. ICE*, 406 F.Supp.3d 90, 111 (D.D.C. 2019). And Plaintiffs have met their "low bar" to show that documents, such as policies, "would have turned up if the agency had looked for it." *Stevens v. ICE*, 432 F.Supp.3d 752, 761 (N.D. Ill. 2020) (quotation omitted). For the foregoing reasons, the Court should find that Defendant has failed to conduct a reasonable search, and compel Defendant to conduct a proper search and disclose responsive documents.

Dated: February 14, 2023

/s/ Anahita D. Sotoohi
Anahita D. Sotoohi
American Civil Liberties Union of Maine
Foundation
PO Box 7860
Portland, Maine 04112
(207) 613-4350
*asotoohi@aclumaine.org*

/s/ Carol J. Garvan
Carol J. Garvan
American Civil Liberties Union of Maine
Foundation
PO Box 7860
Portland, Maine 04112
*cgarvan@aclumaine.org*

6

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2023, I electronically filed the foregoing using the

CM/ECF system, which will send electronic notifications of such filing to all counsel of record.


Dated: February 14, 2023                    /s/ Anahita D. Sotoohi
                                            Anahita D. Sotoohi
                                            American Civil Liberties Union of Maine
                                            Foundation
                                            PO Box 7860
                                            Portland, Maine 04112
                                            (207) 613-4350
                                            *asotoohi@aclumaine.org*

7