UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IMMIGRANT LEGAL ADVOCACY PROJECT, et. al. | ) ) |
| | ) |
| Plaintiffs | ) ) |
| | ) |
| v. | )   2:21-cv-00066-JAW |
| | ) |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) ) |
| | ) |
| Defendant | ) |

**RECOMMENDED DECISION ON MOTIONS FOR SUMMARY JUDGMENT**

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Plaintiffs seek disclosure of certain records related to a new detention facility in Scarborough, Maine. (Amended Complaint, ECF No. 4.)  The parties filed cross motions for summary judgment. (Motions, ECF Nos. 36, 39.)

Following a review of the summary judgment record and the parties' arguments, I recommend the Court (1) grant partial summary judgment in favor of Plaintiffs and order Defendant to supplement its search for certain policy-related records, and (2) grant summary judgment in favor of Defendant on the other issues.

**LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with

respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of the Plaintiffs' claims, a trial-worthy controversy exists, and summary judgment must be denied as to any supported claim. *Id.* at 78 ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

"Summary judgment is the typical and appropriate vehicle to resolve" most FOIA cases. *Gellman v. Dep't of Homeland Sec.*, 525 F. Supp. 3d 1, 6 (D.D.C. 2021); *see also*, *Gray v. Sw. Airlines Inc.*, 33 F. App'x 865, 869 n.1 (9th Cir. 2002) ("in FOIA cases there is rarely any factual dispute at all, but only a legal dispute over how the law is to be applied to the documents at issue"). An agency can generally carry its burden by means of "[a]ffidavits or declarations giving reasonably detailed explanations why any withheld documents fall within an exemption . . . ." *ACLU v. Dep't of Just.*, 681 F.3d 61, 69 (2d Cir. 2012).

If an agency's explanations are inadequate to permit a court to determine whether the agency satisfied the FOIA requirements, the court may "direct the government to revise

its submissions," *Church of Scientology Int'l v. U.S. Dep't of Just.*, 30 F.3d 224, 239 (1st Cir. 1994), or conduct an in camera review to "determine whether the failure of the affidavit stemmed from mere inadvertence or from a truly overbroad reading of the exemption by the agency." *Irons v. Bell*, 596 F.2d 468, 472 (1st Cir. 1979). While in camera inspection should not be used as "a substitute for the government's burden of proof, and should not be resorted to lightly," *Lane v. Dep't of Interior*, 523 F.3d 1128, 1136 (9th Cir. 2008), and while it might be "unreasonable to expect a trial judge" to independently characterize hundreds or thousands of pages, "*in camera* review is particularly appropriate when the documents withheld are brief and limited in number." *Maynard v. C.I.A.*, 986 F.2d 547, 558 (1st Cir. 1993).

## SUMMARY JUDGMENT RECORD

### A.   Plaintiffs' Interest in the Scarborough Facility

Plaintiff ACLU of Maine is a nonprofit organization with a stated mission to educate the public about the civil rights and civil liberties implications of government activities and policies. (Plaintiffs' Statement of Material Facts (PSMF) ¶ 1.) In the summer of 2020, Plaintiffs became concerned that Defendant was using the Cumberland County Jail as a short-term detention facility as one step in the process of moving detainees from some New England states to other parts of the country, such as Louisiana and Texas. (Amended Complaint ¶ 11.) Plaintiffs were concerned that the practice created or increased pandemic-related risks. (*Id.* ¶¶ 12–14.) According to Plaintiffs, the Cumberland County Jail stopped accepting transfers of out-of-state detainees in December 2020. (*Id.* ¶ 15.)

In December 2020, Plaintiffs learned from local news coverage that Defendant had started to build a new facility in Scarborough, Maine. (PSMF ¶ 2; Defendant's Response to Plaintiffs' Statement of Material Facts (DRPSMF) ¶ 2.) The facility generated significant local attention, including protests at the site of the facility. (PSMF ¶ 3.) Plaintiffs decided to use the FOIA to learn how Defendant intends to use the facility. (*Id.* ¶ 4; DRPSMF ¶ 4.)

## B.     The FOIA Request

On January 15, 2021, Plaintiffs submitted a FOIA request to Defendant (ICE). (FOIA Request, ECF Nos. 1-1, 40-2; Defendant's Statement of Material Facts (DSMF) ¶ 1, ECF No. 35; PSMF ¶¶ 5.) Plaintiffs sought the following types of records created after March 1, 2020, unless otherwise specified:

1. Any records approving transfers of ICE detainees to or from ICE Detention Facilities in Maine, including, but not limited to, approval or clearance for transfers as required by ICE's COVID-19 Pandemic Response Requirements.

2. Any records documenting transfers of detainees to or from the Cumberland County Jail, including, but not limited to Form I-203 (Notice to Detain or Release) and Form I-216 (Record of Person and Property Transfer).

3. Any records concerning communications with the Cumberland County Jail regarding transfers of ICE detainees, including but not limited to electronic communications such as emails and fax between employees of ICE and the Cumberland County Jail.

4. Records regarding precautions for transferring ICE detainees to or from the Cumberland County Jail, including, but not limited to, testing, vaccination, physical distancing, and hygiene measures.

5. Any records from June 2019 to the present regarding the lease and development plans for the ICE facility in Scarborough.

4

6. Any records from June 2019 to the present relating to zoning approval for the ICE facility in Scarborough.

7. Any records from June 2019 to the present regarding plans for immigration detention at the ICE facility in Scarborough.

8. Any records regarding policies for immigration detention at the ICE facility in Scarborough.

(FOIA Request at 5–6; DSMF ¶ 2; PSMF ¶ 7.)  The request did not propose search terms. (DSMF ¶ 3.)

Plaintiffs did not receive a response to the FOIA request within twenty business days.  (PSMF ¶ 9; DRPSMF ¶ 9.)  On February 21, 2021, Plaintiffs emailed Defendant's FOIA office seeking a response to the request.  (PSMF ¶ 10.)  Plaintiffs did not receive a response; they then filed this lawsuit on March 3, 2021.  (*Id.* ¶¶ 12–13; Complaint at 12.) The remaining disputes in this case center on the part of the FOIA request seeking "records regarding policies for immigration detention" at the Scarborough facility.

## C.     Defendant's Search Process

Upon receipt of a proper FOIA request, the ICE FOIA Office typically identifies the program offices likely to possess records responsive to the request based on the description of the records requested and knowledge of the missions of the various program offices. (DSMF ¶ 4.)  The ICE FOIA Office then sends the program office "point of contact" a copy of the request and instructions for conducting the necessary searches.  The point of contact in each program office is selected because the person has institutional knowledge of the operations and activities of the program office and because the person is able to identify the appropriate personnel to locate records responsive to request.  (*Id.*)  The point

of contact reviews the materials received from the ICE FOIA Office and, based on her or his institutional knowledge and experience within the program office, the point of contact directs a copy of the FOIA request and the search instructions to the employee(s) or component office(s) likely to possess responsive records.  (*Id.*)  Depending on the search results, responsive records or a "no documents" response will be returned to the program office point of contact who will then forward the search results, if any, to the ICE FOIA Office. (*Id.*)

Based on its review of Plaintiffs' FOIA request and based on its subject matter expertise and knowledge of agency record systems, the ICE FOIA Office determined that (1) the Office of Enforcement and Removal Operations directorate and (2) the Office of Acquisition Management, a program office within the Management and Administration directorate, were the offices likely to have records responsive to Plaintiffs' request. The ICE FOIA Office then instructed the Enforcement and Removal Operations directorate and the Office of Acquisition Management to conduct a comprehensive search and to provide all potentially responsive records located during the search to the ICE FOIA Office for review and processing.  (*Id.* ¶ 5.)

### 1.   The Enforcement and Removal Operations Directorate

The mission of the Enforcement and Removal Operations directorate is to identify, arrest, and remove noncitizens who present a danger to national security, are a risk to public safety, enter the United States illegally, or otherwise undermine the integrity of immigration laws and border control efforts.  (*Id.* ¶ 6.)  In general, when the directorate receives a FOIA task from the ICE FOIA Office, the request is submitted to the Information

Disclosure Unit. (*Id.* ¶ 7.) Points of contact in the unit review the substance of the request and based on subject matter expertise and knowledge of the program offices' activities, they forward the FOIA request to specific individuals and/or component offices, and direct specific employees to conduct searches of their file systems which in their judgment would be reasonably likely to have responsive records, if any exist. (*Id.*) Based on their knowledge and subject matter expertise, the employees exercise discretion in the choice of the search locations and specific search terms used to ascertain whether potentially responsive documents exist. (*Id.*) After the searches are complete, the individuals and component offices provide any potentially responsive records to the points of contact within the Information Disclosure Unit, who in turn provide the records to the ICE FOIA Office. (*Id.*) The ICE FOIA Office then reviews the collected records for responsiveness. (*Id.*)

Upon receipt of Plaintiffs' FOIA request from the ICE FOIA Office, the point of contact reviewed the substance of the request and based on her experience and knowledge of her office's practices and activities, determined that the Policy Office and the Boston Field Office would be reasonably likely to have documents responsive to the request, if any exist. (*Id.* ¶ 9.) The point of contact identified the Policy Office because that office might have records regarding policies and identified the Boston Field Office because its geographic area of responsibility includes Maine. (*Id.*) The point of contact tasked the Policy Office and the Boston Field Office to search for documents responsive to the request. (*Id.*)

a.   *The Policy Office Search*

On March 30, 2021, the FOIA point of contact in the directorate's Policy Office, a Management and Program Analyst who prepares policies for enforcement of the immigration laws, searched the ICE Policy Manual and the directorate's Policy Library using the terms "Scarborough" and "detention." (*Id.* ¶ 10.) The ICE Policy Manual is a repository of current ICE-wide management and operational policies; the repository provides ICE employees with quick access to such policies through a natural language search engine. (*Id.*) Policies specific to the Enforcement and Removal Operations directorate are posted in the directorate's Policy Library, which provides its employees with access to the policies through a natural search engine. (*Id.*) The two resources are the only databases dedicated to compiling ICE-wide and directorate-specific policies. (*Id.*; Plaintiffs' Response to Defendant's Statement of Material Facts (PRDSMF) ¶ 10.) The Policy Office search yielded no results. (DSMF ¶ 10.)

b.   *The Boston Field Office Search*

Upon receipt of Plaintiffs' request from the point of contact in the directorate's Information Disclosure Unit, the point of contact in the Boston Field Office determined that a supervisory detention and deportation officer from the Portland suboffice and two assistant field office directors would be reasonably likely to have responsive records related to the request. (*Id.* ¶ 11.)

On March 25, 2021, the supervisory detention and deportation officer in the Portland suboffice, who oversaw the daily operations in the state of Maine (including the supervision of detainee transfers) and who would be involved in plans for facilities in the

state of Maine, searched his Outlook email account for the terms "ICE transfers," "Detainee transfers," "Cumberland County Jail," "Sheriff Kevin Joyce," "Scarborough office," "Zoning Approval," "Scarborough office lease," and "COVID." (*Id.* ¶ 14.) He then forwarded all potentially responsive records to the directorate's Information Disclosure Unit point of contact, who returned the potentially responsive records to the ICE FOIA Office. (*Id.* ¶¶ 14, 15.)

Two assistant field office directors oversaw day-to-day operations of the Boston Field Office, including the enforcement of the U.S. immigration laws and agency policies as they pertain to detainee transfers and transportation. (*Id.*) On March 17, 2021, the assistant field office director who oversaw detention operations searched his Outlook email account for the terms "CCJ," "Cumberland," and "Cumberland County." (*Id.* ¶ 12.) He then forwarded all potentially responsive records to the directorate's Information Disclosure Unit point of contact, who returned the potentially responsive records to the ICE FOIA Office. (*Id.* ¶¶ 12, 15.)

On March 29, 2021, an assistant field office director in the Boston Field Office, who oversaw operations in the states of New Hampshire, Vermont, and Maine and is involved in plans for facilities within the states, searched his computer files using the search function for the terms "Cumberland county jail" and "Scarborough." (*Id.* ¶ 13.) He also searched his Outlook email account for the terms "Cumberland county jail" and "Scarborough." (*Id.*) He then forwarded all potentially responsive records to the directorate's Information Disclosure Unit point of contact, who returned the potentially responsive records to the ICE FOIA Office. (*Id.* ¶¶ 13, 15.)

###### 2.        The Office of Acquisition Management

The Office of Acquisition Management's mission is to deliver quality acquisition solutions in support of the ICE and DHS missions, and it is to manage ICE's enterprise-wide strategic approach to procurement.  (*Id.* ¶ 16.)  The office operates as a full business partner with internal and external organizations and serves as a strategic asset dedicated to the improvement of the agency's overall business performance.  (*Id.*)

When the Office of Acquisition Management receives a FOIA request from the ICE FOIA Office, the point of contact within the Acquisition Policy Office reviews the request and after considering the program office's duties and mission and the manner in which the office routinely keeps records, determines which units would be reasonably likely to have responsive records, if any exist.  (*Id.* ¶ 17.)  The Acquisition Policy Office point of contact then sends the request to the points of contact in the appropriate units.  (*Id.*)  The unit points of contact choose the specific search terms to be used to ascertain whether potentially responsive documentation exist.  (*Id.*)  After the searches are complete, the unit points of contact provide any potentially responsive records to the Acquisition Policy Office point of contact, who in turn provides the records to the ICE FOIA Office.  (*Id.*)  The ICE FOIA Office then reviews the collected records for responsiveness.  (*Id.*)

After the Acquisition Policy Office point of contact reviewed the request from the ICE FOIA Office, because the request referenced a potential future Enforcement and Removal Operations facility, the point of contact determined that the Detention Compliance and Removals Office would be reasonably likely to have responsive records, if any existed. (*Id.* ¶ 18.)

The Detention and Compliance Removals Office is the unit within the Office of Acquisition Management that provides acquisition support to ICE headquarters and field offices throughout the country for detention, along with ancillary services and supplies in support of the ICE mission to remove noncitizens from the United States. (*Id.*) The Detention and Compliance Removals Office also supports the Enforcement and Removal Operations directorate in the planning, awarding, and administering of contracts for law enforcement and compliance requirements, including detention management compliance, fugitive operations, criminal alien program, removal management, and response coordination. (*Id.*)

On March 18, 2021, a senior advisor in the Detention and Compliance Removal Office who prepares internal operating guides and external correspondence for vendors and contractors, and who is familiar with the office's file systems and contracting applications, searched the Office of Acquisition Management's shared drive using the terms "Scarborough," "Maine," and "Cumberland County Jail." (*Id.* ¶ 19.) She also searched the Purchase Request Information System Management contracting database using the terms "Scarborough" and "Cumberland County." (*Id.*) The contracting database is used for all formal contracting actions, including contract awards, contract modification actions, and intergovernmental service agreements. (*Id.*) The search did not return any potentially responsive records. (*Id.*)

## D.   Initial Disclosures

Defendant began to produce documents to Plaintiffs in May 2021. (PSMF ¶ 14.) In December 2021, the parties began to meet periodically to discuss the status of Defendant's

search, Plaintiffs' review of disclosed documents, and redactions Plaintiffs sought to challenge. (Plaintiffs' Statement of Additional Material Facts (PSAMF) ¶ 1; PSMF ¶ 16.) During the meetings, Plaintiffs' counsel noted that the disclosed documents did not appear to contain an operational or planning document that explained how the new Scarborough facility would be used, how long detained persons would be held at the facility, or how many detained persons might be held at the facility at one time. (PSAMF ¶ 2; PSMF ¶ 17.)

In April 2022, Defendant's attorney asked Plaintiffs to provide examples of documents that would qualify as the type of operational or planning document Plaintiffs were seeking. (PSAMF ¶ 3; PSMF ¶ 18.) Plaintiffs provided two examples of documents, which if disclosed, would likely resolve the case: certain portions of ICE's Deportable Alien Control System and Enforcement and Removal Operations inspection reports. (PSAMF ¶ 4; PSMF ¶ 19.)[1] On May 31, 2022, Defendant responded that both documents fall outside the parameters of the FOIA request. (PSAMF ¶ 5; PSMF ¶ 21.) On June 2, 2022, Plaintiffs asked Defendant to provide more detail on their position and reiterated that the FOIA request sought "records . . . regarding plans for immigration detention" as well as "records regarding policies for immigration detention." (PSAMF ¶¶ 6–7; PSMF ¶¶ 23, 25.) In a June 9, 2022, email response, Defendant asserted that the inspection reports were "neither a plan nor a policy about immigration detention at the Scarborough facility, as the request seeks." (PSAMF ¶ 8; PSMF ¶ 26.)

---

[1] In Plaintiffs' statement of additional material facts, Plaintiffs said that disclosure of the documents "would" resolve the case, whereas in in Plaintiffs' statement of material facts, which it filed later, Plaintiffs said that disclosure of those documents "might" resolve the case.

Defendant completed production in July 2022.  (PSMF ¶ 14.)  As the result of its search processes, Defendant determined that all locations reasonably likely to contain responsive records were searched, and Defendant produced a total of 1,939 pages in response to Plaintiffs' FOIA request.  (DSMF ¶¶ 20–21; PRDSMF ¶ 21.)  Defendant has not produced any policies regarding immigration detention at the ICE facility in Scarborough.  (PSFM ¶ 15.)

### E.   Summary Judgment Arguments and Subsequent Searches

Both parties moved for summary judgment. (Defendant's motion, ECF No. 36; Plaintiffs' motion, ECF No. 39.) The issue generated by the motions is whether Defendant conducted an adequate search in response to the FOIA request. Plaintiffs argue that Defendant failed to show that it conducted an adequate search based primarily on the following:

1. Defendant did not show that the employees who conducted the search in the Boston Field Office were the only individuals who might have records "regarding policies for immigration detention."  (Plaintiffs' Response at 5, ECF No. 37; Plaintiffs' Motion at 6.)

2. Defendant did not sufficiently explain where and how documents "regarding policies" are stored and organized within the Boston Field Office.  (Plaintiffs' Response at 5; Plaintiffs' Motion at 6.)

3. Defendant did not explain why the employees within the Boston Field Office used meaningfully different terms to search their email accounts and why one only searched emails and not computer files.  (Plaintiffs' Response at 6, Plaintiffs' Motion at 6–7.)

4. The keyword search terms for the Boston Field Office were too narrow—for example, one employee searched for "Scarborough office" but did not search for "Scarborough" alone. (Plaintiffs' Response at 6, Plaintiffs' Motion at 7.)

5. The search of the Policy Office was too narrow—for example, when conducting the electronic search, Defendant must have used the terms "Scarborough" and "detention" together rather than either "Scarborough" or "detention" individually because Defendant has published policies containing the word "detention" alone and the policies do not reference specific facilities or locations by name. (Plaintiffs' Response at 7–8, Plaintiffs' Motion at 7–9.)

6. Defendant interpreted Plaintiffs' request for "records regarding policies for immigration detention" too narrowly, as evidenced by its assertion that entries in the Deportable Alien Control System and Inspection Reports were beyond the scope of the FOIA request. (Plaintiffs' Response at 8–9; Plaintiffs' Motion at 9–11.)

After Plaintiffs' initial summary judgment filings, Defendant clarified certain ambiguities and performed some additional searches. Defendant specified that the three points of contact in the Boston Field Office were the only directors and/or supervisors that oversaw operations in Maine and/or would be involved in plans for Enforcement and Removal Operations facilities in the state of Maine. (Defendant's Statement of Additional Material Facts (DSAMF) ¶ 2.)

Defendant also represented that the supervisory detention and deportation officer within the Boston Field Office conducted a supplemental search of his Outlook email using the standalone term "Scarborough" and a search of his computer files using the terms "ICE

14

transfers," "Detainee transfers," "Cumberland County Jail," "Sheriff Kevin Joyce," and the standalone term "Scarborough." (*Id.* ¶ 3.) The new searches returned four potentially responsive records amounting to seventy-seven pages, which were reviewed for responsiveness and produced to Plaintiffs (subject to legitimate withholdings) on January 27, 2023. (*Id.*; Defendant's Response to Plaintiffs' Motion at 7, ECF No. 49.)

Defendant clarified that the March 2022 search of the ICE Policy Manual and the Policy Library of the Enforcement and Removal Operations directorate originally used the terms "Scarborough" and "detention" together. (DSAMF ¶ 1.) The Policy Office conducted an additional search of the ICE Policy Manual and the Enforcement and Removal Operations Policy Library using the term "Scarborough" alone without "detention." (*Id.*) The additional search resulted in no records responsive to Plaintiffs' FOIA request. (*Id.*)

Defendant provided further information on the Deportable Alien Control System database and the inspection reports. The Deportable Alien Control System is a case management system that tracks detainees. (*Id.* ¶ 4.) The system provides management information concerning the status and disposition of an individual detainee's case and is used to track the location of detained individuals, as well as the status of individuals' immigration court hearings. (*Id.*) Factors considered in deciding whether to apprehend or detain an individual are not recorded in that system. (*Id.*) The data contains information generated after the initial processing of a criminal alien, with much of the information derived from the I-213 Record of Deportable Alien, which information includes place of incarceration, federal, state or county identification numbers, data and type of conviction,

release date, and appropriate criminal charge code. (*Id.*) A search of the entries for individuals detained at the Scarborough facility would not result in responsive records because the Deportable Alien Control System is used for case management tracking and does not contain any policy guidance. (*Id.*)

Within the Enforcement and Removal Operations directorate, inspection reports are a form worksheet that inspectors complete to ensure that detainees in ICE custody are assigned to the least restrictive environment consistent with the safety and security of the detained population and orderly facility operations. (*Id.* ¶ 5.) In December 2022, a management program analyst from the Executive Support Unit within the Custody Management division of the Enforcement and Removal Operations directorate conducted a search of the inspection reports. (*Id.* ¶ 6.) The search was conducted using the terms "Scarborough" and "Scarborough facility," and did not result in any potentially responsive records. (*Id.*)

## DISCUSSION

The Freedom of Information Act, 5 U.S.C. § 552, "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80 (1973). In addition to publishing certain information in the Federal Register, *id.* § 552(a)(1), and making other information available for public inspection in electronic format (referred to as an electronic reading room), *id.* § 552(a)(2), federal agencies generally must make records promptly available upon any request reasonably describing the records sought, *id.*

§ 552(a)(3), unless the records fall within a listed exemption.  *Id.* § 552(b).  The statute authorizes federal district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).

"Because FOIA's purpose is to expose the operations of federal agencies to the light of public scrutiny, its exemptions are construed narrowly, with all doubts resolved in favor of disclosure."  *Eil v. U.S. Drug Enforcement Admin.*, 878 F.3d 392, 397 (1st Cir. 2017) (quotation marks omitted).  "[T]he government agency bears the burden of proving the applicability of a specific statutory exemption."  *Union Leader Corp. v. Dep't of Homeland Sec.*, 749 F.3d 45, 50 (1st Cir. 2014).

"The adequacy of an agency's search for documents under the FOIA is judged by a standard of reasonableness and depends upon the facts of each case."  *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993).  "The crucial issue is not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.'"  *Id.* (quoting *Safecard Servs., Inc. v. S.E.C.,* 926 F.2d 1197, 1201 (D.C. Cir. 1991)).  "[W]hen the request as drafted would require an agency to undertake an unreasonably burdensome search, the agency can decline to process the request."  *Nat'l Security Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020).

## A.    Resolved Issues (Arguments one, three, and four)

To the extent Plaintiffs continue to assert their first, third, and fourth arguments identified above, the summary judgment record, as supplemented by Defendant after searching for additional documents after the initial summary judgment filings, establishes

the reasonableness and adequacy of Defendant's search efforts.  The factual clarification regarding the roles of the three employees in the Boston Field Office and the new searches the employees performed have effectively addressed whatever shortcomings might have existed in Defendant's initial response to the FOIA request regarding the issues identified in arguments one, three, and four.  Injunctive relief is not warranted based on Plaintiff's first, third, and fourth arguments.

## B.      Request for Records Regarding Policies (Arguments two and six)

In their second and sixth arguments discussed above, Plaintiffs raise two challenges to Defendant's construction of the phrase "records regarding policies for immigration detention at the ICE facility in Scarborough" within the FOIA request.  First, while Plaintiffs clarified that they do not seek Deportable Alien Control System records and are evidently no longer requesting the inspection reports after Defendant's supplemental search produced no results,[2] Plaintiffs argue that Defendant construed the words "records regarding policies" too narrowly as evidenced by defense counsel's assertion that the document identified by Plaintiffs as the subject of the request was "neither a plan nor a policy about immigration detention at the Scarborough facility, as the request seeks." Plaintiffs contend that the response implies that Defendant impermissibly narrowed the request by essentially reading the phrase "records *regarding* policies" as "records *of* policies."  Second, although Plaintiffs acknowledge that Defendant adequately explained how it stores policies in the Policy Library, Plaintiffs argue that Defendant has not

---

[2] Defendants also clarified that it has published online all inspection reports occurring since June 2019. (Defendant's Response at 3 n.1, ECF No. 49.)

adequately explained how it stores documents "regarding" policies, which Plaintiffs contend is a much broader category.

Plaintiffs' arguments for a broader interpretation are unpersuasive. Although an agency "has a duty to construe a FOIA request liberally," *Nation Magazine v. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995), the agency is not required to look beyond "the four corners of the request," *Kowalczyk v. Department of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996), and is "not required to divine a requester's intent." *Landmark Legal Foundation v. Environmental Protection Agency*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003). Furthermore, the scope of a request must be reasonable and not overly broad. *See Leopold v. Immigration & Customs Enforcement*, 560 F. Supp. 3d 189, 198 (D.D.C. 2021) (summarizing cases holding that a request fails to reasonably describe records if it is "so broad" or "too vague" to permit employees to identify and locate records with a reasonable amount of effort). In their attempt to show that Defendant interpreted the language of the request too narrowly, Plaintiffs construe the request too broadly.

During their communications with Defendant, Plaintiffs asserted that the phrase "records regarding policies of immigration detention at the Scarborough facility" included the entries from the Deportable Alien Control System, as well as the inspection reports because the sources are "forms that use qualitative and quantitative measures to assess how a given ICE facility does or does not align with ICE's detention standards and includes extensive review of a facility's written policies." (Plaintiffs' Response at 9; Plaintiffs' Motion at 9–10.) In their summary judgment filings, Plaintiffs claim Defendants should have understood the phrase "records regarding policies for immigration detention at the

Scarborough facility" to include "not just the policies themselves but [also] documents such as drafts of those policies; email, chat, and text correspondence among Defendant's staff concerning the policies; and any discussion, documented in any format, regarding implementation or creation of policies," (Plaintiffs' Response at 4, Plaintiffs' Motion at 5), as well as "meeting minutes and emails discussing policy application." (Plaintiffs' Reply at 5, ECF No. 50.)

Plaintiff's interpretation of the request would arguably require the production of any document that references in any way a policy. Such a construction would require a search that could fairly be characterized as overly burdensome. If Plaintiffs intended to request not only the policies and interpretive guidance about policies but other related documents, including all documents related to the application of policies in individual cases, Plaintiffs could have defined the FOIA request more narrowly. Use of the broad and in this context the somewhat ambiguous word "regarding" cannot, without being considered overly broad, reasonably be construed to require Plaintiffs to produce every document that could conceivably be related to the detention policies at the Scarborough facility. Plaintiffs' argument that Defendant must provide greater explanation about how it stores "records regarding policies" fails for similar reasons. Defendant did not impermissibly narrow Plaintiffs' request.[3]

---

[3] Based on the canon of interpretation disfavoring surplusage, at least one court has accepted an expansive interpretation of the similar phrase "related to" policies. *Knight First Amend. Inst. at Columbia Univ. v. Centers for Disease Control & Prevention*, 560 F. Supp. 3d 810, 821 (S.D.N.Y. 2021). Because the inquiry into the adequacy of a search is context specific, however, it is unclear how much weight that case should be given here. To the extent that the reasoning might apply here, I am unpersuaded that the interpretive

## C.    Policy Search (Argument five)

Plaintiffs assert—based primarily on the Policy Library search and in accordance with their fifth argument identified above—that Defendant's efforts were not reasonably calculated to locate all policy records for immigration detention at the facility.  Although Defendant reasonably construed the language of the FOIA request somewhat more narrowly than Plaintiffs have urged, Plaintiffs' argument has merit.  The final item in the FOIA request can reasonably be read to seek policies and interpretative guidance about the policies in effect or applicable to any detention activities occurring or planned to occur at the Scarborough facility.

Defendant did not produce any documents or files that constitute or reflect the policies that govern Defendant's activities at the Scarborough facility.  The summary judgment record, however, includes information to support the conclusion that responsive records likely exist and could have been located with reasonable effort.  In response to one of Plaintiffs' statements of fact, Defendant asserts it did not designate the Scarborough facility as a "detention facility," (DRPSAMF ¶ 2; Defendant's Response at 3 n.1 (citing https://www.ice.gov/detention-facilities)), but Defendant apparently has never denied that individuals are being detained at the facility at least for some amount of time.  Defendant describes the facility as a "check-in location."  (Defendant's Response at 3 n.1 (citing https://www.ice.gov/contact/check-in)).  Because the Scarborough facility is evidently one of approximately 120 such check-in facilities across the country, Defendant presumably

---

tools from statutory construction should apply in precisely the same way in this FOIA context and supersede the requirement of a reasonably specific description.

has some policies that govern the "check-in" process and that describe the circumstances under which an individual would remain at the facility for even a short period of time.

The search terms used are also an issue. "Where the agency's search terms are reasonable," courts generally will not "micro manage" or "second guess" the agency just because a plaintiff believes that "other search terms might have been superior." *Liberation Newspaper v. Department of State*, 80 F. Supp. 3d 137, 146–47 (D.D.C. 2015). When challenged, "[h]owever, an agency must provide logical explanations for decisions it makes with respect to the search terms it does or does not use." *NAACP Legal Def. & Educ. Fund, Inc. v. Department of Justice*, 463 F. Supp. 3d 474, 484 (S.D.N.Y. 2020).

Defendant searched the Policy Library for only two terms, "Scarborough" and "detention" together. Plaintiffs objected to the limited number of words used and raised legitimate concerns as to whether Defendant's policy records ordinarily mention location names. When Defendant performed a supplemental search, it used the location term "Scarborough" separately but declined to search for words like "detention," "detain," "detainees," or other similar words. In addition, although Defendant has described the Scarborough facility as a "check-in location," Defendant did not search for policies that govern "check-in locations."

Finally, Defendant has not adequately explained why an electronic search of the Policy Library using search terms is the only reasonable means to search for the policy records and interpretive guidance applicable to the activities that occur at the Scarborough facility. Defendant has identified the three employees with the best knowledge of the plans and activities at the facility. Presumably, the employees tasked with establishing and

overseeing the facility would know which policies and guidance applied to the facility. The employees and their subordinates would undoubtedly need to have access to the policies to assure compliance with the policies that govern the facility. In other words, logic suggests that even without a complete electronic search, the employees and thus Defendant could identify the policies and related instructive guidance that apply to the Scarborough facility.

As to Plaintiffs' request for policy-related documents, therefore, the summary judgment record establishes (1) Plaintiffs' FOIA request includes a request for the policies and related written guidance that govern operations at the Scarborough facility, (2) Defendant did not use sufficient search terms when it conducted its electronic search of its records, and (3) Defendant has not adequately explained why the supervisory and responsible employees at the Scarborough facility could not otherwise identify and produce the policies that govern the facility.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court (1) grant partial summary judgment in favor of Plaintiffs and order Defendant to supplement the search of the Policy Library (a) through an electronic search using additional search terms to identify any policies, policy statements, and written guidance applicable to any detainees and detention activities (including when an individual who is presented for a "check-in" might be held) at the Scarborough facility, and (b) through the disclosure by the Boston Field Office supervisory and responsible employees of the policies they understand govern the detention or holding of individuals at the Scarborough facility. I also recommend the Court grant

summary judgment in favor of Defendant on the other issues that are the subject of the

motions for summary judgment.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 27th day of March, 2023.